1  Ronald Y. Rothstein (*pro hac vice*)
   RRothste@winston.com
2  **WINSTON & STRAWN LLP**
   35 West Wacker Drive
3  Chicago, IL 60601-9703
   Telephone: (312) 558-5600
4  Facsimile: (312) 558-5700

5  Megan L. Whipp (SBN: 319182)
   MWhipp@winston.com
6  **WINSTON & STRAWN LLP**
   333 South Grand Avenue, 38th Floor
7  Los Angeles, CA 90071-1543
   Telephone:    (213) 615-1700
8  Facsimile:    (213) 615-1750

9  Crista N. Welch (SBN: 312582)
   CWelch@winston.com
10 **WINSTON & STRAWN LLP**
   101 California Street
11 San Francisco, CA 94111-5802
   Telephone:    (415) 591-1000
12 Facsimile:    (415) 591-1400

13 Attorneys for Defendant
   THE J.M. SMUCKER COMPANY
14

15                **UNITED STATES DISTRICT COURT**

16                **NORTHERN DISTRICT OF CALIFORNIA**

17 SHELLY ROBINSON, individually and on        ) **Case No. 4:18-cv-04654-HSG**
   behalf of all others similarly situated,     )
18                                               ) **CLASS ACTION**
              Plaintiff,                         )
19                                               ) **NOTICE OF MOTION AND MOTION TO**
      vs.                                        ) **DISMISS PLAINTIFF'S FIRST AMENDED**
20                                               ) **COMPLAINT; MEMORANDUM OF**
   THE J.M. SMUCKER COMPANY, an Ohio           ) **POINTS AND AUTHORITIES**
21 corporation; and DOES 1 through 10, inclusive, )
                                                 ) Hearing Date:  February 21, 2019
22            Defendants.                        ) Time: 2:00pm
                                                 ) Courtroom: 2
23                                               ) Judge: Hon. Haywood S. Gilliam, Jr.
                                                 )
24                                               ) Complaint filed: August 2, 2018
                                                 ) First Amended Complaint filed: October 24,
25 _____ ) 2018

26

27

28

## NOTICE OF MOTION AND MOTION

### TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 21, 2019 at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2 of this Court, located at 1301 Clay Street, Fourth Floor, Oakland, California, 94163, defendant The J.M. Smucker Company ("Defendant"), will and hereby does move this Court for an order dismissing the First Amended Complaint (Dkt. No. 22) of plaintiff Shelly Robinson ("Plaintiff").

Defendant moves on the grounds that, pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff fails to state a claim upon which relief can be granted. This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities in support of the Motion filed concurrently herewith, the record in this action, and any evidence and argument that may be presented at or before the hearing.

Dated: November 7, 2018

WINSTON & STRAWN LLP

By:   */s/ Ronald Y. Rothstein*
Ronald Y. Rothstein (*pro hac vice*)
RRothste@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Megan L. Whipp (SBN: 319182)
MWhipp@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone:        (213) 615-1700
Facsimile:        (213) 615-1750

Crista N. Welch (SBN: 312582)
CWelch@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111-5802
Telephone:        (415) 591-1000
Facsimile:        (415) 591-1400

Attorney for Defendant

2

1   The J.M. Smucker Company

1

## <u>TABLE OF CONTENTS</u>

2

Page

3    I.      INTRODUCTION ................................................................................................ 1

4    II.     STATEMENT OF ALLEGED FACTS.............................................................. 2

5    III.    LEGAL STANDARD......................................................................................... 3

6    IV.     ARGUMENT ..................................................................................................... 4

7            A.      Plaintiff Fails to State a Plausible Cause of Action ..................................... 4

8            B.      Plaintiff Fails to Satisfy the Pleading Requirements of Rule 9(b)............... 8

9            C.      Plaintiff Lacks Standing........................................................................... 10

10                  1.      Plaintiff has not suffered an injury-in-fact........................................ 10

11                  2.      Plaintiff lacks standing to seek injunctive relief ................................ 12

12           D.      Plaintiff Lacks Standing Under Kwan v. SanMedica Int'l ......................... 13

13           E.      Plaintiff's Claims Are Preempted by Federal Regulations ......................... 15

14           F.      The Primary Jurisdiction Doctrine Bars Plaintiff's Claims ....................... 16

15           G.      Negligent Misrepresentation Fails Under California's Economic Loss Rule............ 18

16           H.      Plaintiff's UCL "Unfair Prong" Claim Lacks Merit................................. 19

17           I.      Plaintiff's UCL "Unlawful Prong" Claim Lacks Merit ............................ 21

18           J.      Plaintiff's UCL "Fraudulent Prong" Claim Lacks Merit........................... 22

19           K.      Plaintiff's UCL and FAL Claims Fail Because There Is an Adequate Remedy
                     Available at Law ..................................................................................... 22

20
             L.      Plaintiff's Prayer for Punitive Damages Should Be Dismissed.................. 23
21
     V.      CONCLUSION................................................................................................ 25
22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All One God Faith, Inc. v. The Hain Celestial Group, Inc.*,
   No. C-09-3517 SI, 2012 WL 3257660 (N.D. Cal. Aug. 8, 2012)................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................................3

*Avazian v. Genworth Life & Annuity Ins. Co.*,
   2017 WL 6025330 (C.D. Cal. Dec. 4, 2017) ...............................................................8

*Bank of Am. v. City & County of S.F.*,
   309 F.3d 551 (9th Cir. 2001) .................................................................................15

*Bell Atl. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................3

*Besser v. Chapple*,
   No. SA-CV-09-230 DOC (EX), 2009 WL 10698206 (C.D. Cal., Dec. 3, 2009) ............24

*Buckland v. Threshold Enters., Ltd.*,
   155 Cal. App. 4th 798 (2007) ................................................................................11

*Cipollone v. Liggett Group, Inc.*,
   505 U.S. 504 (1992)..............................................................................................15

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013).........................................................................................11

*Clark v. Time Warner Cable*,
   523 F.3d 1110 (9th Cir. 2008) ...............................................................................17

*Daugherty v. Am. Honda Motor Co., Inc.*,
   144 Cal. App. 4th 824 (2006) ................................................................................20

*Davidson v. Kimberly-Clark Corp*,
   889 F.3d 956 (9th Cir. 2018) .................................................................................12

*Dennis v. Ralph Lauren Corp.*,
   No. 16-CV-1056-WQH-BGS, 2016 WL 7387356 (S.D. Cal. Dec. 20, 2016) ...............4

*E & E Co. v. Kam Hing Enterprises, Inc.*,
   No. C-08-871 MMC, 2008 WL 4962991 (N.D. Cal. Nov. 19, 2008) .........................21

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ........................................................................4, 21, 22

*Engel v. Novex Biotech, LLC*,
   No. 15-15492, 2017 WL 1420347 (9th Cir. 2017) ....................................................14

*Far East Conference v. United States*,
   342 U.S. 570 (1952)..............................................................................................17

*Fardella v. Downey Sav. & Loan Ass'n*,
   No. 00-4393, 2001 WL 492442 (N.D. Cal. May 9, 2001)..........................................20

*Farina v. Nokia Inc.*,
   625 F.3d 97 (3d Cir. 2010).....................................................................................15

ii

*Faulk v. Sears Roebuck and Co.,*
  2013 WL 1703378 (N.D. Cal. Apr. 19, 2013) ..............................................................21

*Fernandez v. City & Cty. of San Francisco,*
  No. C-93-2597 MHP, 1994 WL 117796 (N.D. Cal. Mar. 14, 1994)...........................23

*In re First Magnus Financial Corp.,*
  No. 4:07-BK-01578-JMM, 2010 WL 779318 (Bankr. D. Ariz., Mar. 3, 2010) ........9, 20

*Fraher v. Surydevara,*
  No. 106-CV-01120-AWI-GSAPC, 2009 WL 1371829 (E.D. Cal., May 15, 2009),
  *report and recommendation adopted,* No. 1:06-CV-1120-AWI GSA, 2009 WL
  2870100 (E.D. Cal., Sept. 3, 2009) ...............................................................................25

*Fraker v. Bayer Corp.,*
  No. CVF-08-1564 AWI GSA, 2009 WL 5865687 (E.D. Cal. Oct. 6, 2009)................14

*Geier v. Am. Honda Motor Co.,*
  529 U.S. 861 (2000)......................................................................................................15

*Gordon v. Church & Dwight Co.,*
  No. C-09-5585 PJH, 2010 WL 1341184 (N.D. Cal. Apr. 2, 2010) ..............................18

*Gutierrez v. Kaiser Permanente,*
  No. 217-CV-00897-MCE GGH, 2018 WL 2412319 (E.D. Cal. May 29, 2018)..........23

*Heighley v. J.C. Penney Life Ins. Co.,*
  257 F. Supp. 2d 1241 (C.D. Cal. 2003) ........................................................................23

*Hillsborough Cty. v. Automated Med. Labs,*
  471 U.S. 707 (1985).......................................................................................................15

*Hodges v. Apple Inc.,*
  No. 13-CV-01128-WHO, 2013 WL 4393545 (N.D. Cal. Aug. 12, 2013) ...................20

*Johns v. Bayer Corp.,*
  No. 09-CV-1935-AJB DHB, 2013 WL 1498965 (S.D. Cal. Apr. 10, 2013)................14

*Jones v. Bayer Healthcare LLC,*
  No. 08–2219 SC, 2009 WL 1186891 (N.D. Cal. May 4, 2009) ...................................11

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009) .........................................................................................8

*Khan v. CitiMortgage, Inc.,*
  975 F. Supp. 2d 1127 (E.D. Cal. 2013)..........................................................................21

*Kwan v. SanMedica Int'l,*
  854 F.3d 1088 (9th Cir. 2017) ...........................................................................2, 13, 14, 15

*Kwan v. SanMedica Int'l, LLC,*
  No. 14-CV-03287-MEJ, 2015 WL 848868 (N.D. Cal. Feb. 25, 2015), *aff'd sub
  nom. Kwan,* 854 F.3d 1088 ...........................................................................................13

*Kwikset Corp. v. Super. Ct.,*
  51 Cal. 4th 310 (2011) ...................................................................................................11

*La Jolla Spa MD, Inc. v. Avidas Pharmaceuticals, LLC,*
  No. 17-CV-1124-MMA (WVG), 2017 WL 4870374 (S.D. Cal., Oct. 27, 2017)..........23

*Ladore v. Sony Computer Ent. Am., LLC,*
  75 F. Supp. 3d 1065 (N.D. Cal. 2014) ......................................................................18, 19

*Leadsinger, Inc. v. BMG Music Publ'g,*
  429 F. Supp. 2d 1190 (C.D. Cal. 2005) ...........................................................................3

iii

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..................................................................................................10

*Martin v. Tradewinds Beverage Co.*,
   No. CV-16-9249 PSG (MRWX), 2017 WL 1712533, (C.D. Cal. Apr. 27, 2017),
   *on reconsideration,* No. 16-CV-9249 PSG (MRW), 2018 WL 313123 (C.D. Cal.
   Jan. 4, 2018)...........................................................................................................24

*Meyer v. Colavita USA Inc.*,
   2011 WL 13216980 (S.D. Fla. Sept. 13, 2011) ........................................................7

*Miller v. Rykoff-Sexton, Inc.*,
   845 F.2d 209 (9th Cir. 1988) ....................................................................................3

*Minkler v. Apple, Inc.*,
   65 F. Supp. 3d 810 (N.D. Cal. 2014) .................................................................18, 19

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ....................................................................................3

*Munning v. Gap, Inc.*,
   238 F. Supp. 3d 1195 (N.D. Cal. 2017) .............................................................22, 23

*Mut. Pharm. Co. v. Watson Pharm., Inc.*,
   No. CV 09-5700 PA (RCX), 2009 WL 3401117 (C.D. Cal. Oct. 19, 2009) ................17

*Nader v. Allegheny Airlines. Inc.*,
   426 U.S. 290 (1976)................................................................................................16

*Nat'l Family Planning & Reproductive Health Ass'n v. Gonzalez*,
   468 F.3d 826 (D.C. Cir. 2006) ................................................................................11

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd* 322 F. App'x. 489 (9th Cir. 2009) ...........9

*Opperwall v. State Farm Fire & Cas. Co.*,
   No. 17-CV-07083-YGR, 2018 WL 1243085 (N.D. Cal. Mar. 9, 2018)........................23

*Padilla v. Costco Wholesale Corp.*,
   No. 11-C-7686, 2012 WL 2397012 (N.D. Ill. June 21, 2012).....................................9

*Petkevicius v. NBTY, Inc.*,
   No. 314-CV-02616-CAB RBB, 2017 WL 1113295 (S.D. Cal. Mar. 24, 2017)............24

*Portney v. CIBA Vision Corp.*,
   No. SA-CV-070854-AGM-LGX, 2009 WL 305488 (C.D. Cal. Feb. 6, 2009) ........21, 22

*Richards v. Safeway Inc.*,
   No. 13-cv-04317-JD, 2014 WL 12703716 (N.D. Cal. Sept. 22, 2014) .......................12

*Ries v. Arizona Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012)............................................................................12

*Rojas v. Capital One Bank (USA) N.A.*,
   No. CV 16-09045-AB (SSX) 2017 WL 7806584 (C.D. Cal., Aug. 14, 2017) ..............12

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985) ................................................................................8, 9

*Sloan v. Gen. Motors LLC*,
   287 F. Supp. 3d 840 (N.D. Cal. 2018), *order clarified*, No. 16-CV-07244-EMC,
   2018 WL 1156607 (N.D. Cal. Mar. 5, 2018)...........................................................19

*Smith v. Allstate Ins. Co.*,
   160 F. Supp. 2d 1150 (S.D. Cal. 2001).....................................................................8

iv

*Spokeo, Inc. v. Robins*,
 136 S. Ct. 1540 (2016) ........................................................................................................10

*Stanley v. Bayer Healthcare LLC*,
 No. 11-CV-862-IEG BLM, 2012 WL 1132920 (S.D. Cal. Apr. 3, 2012) ................................4, 14

*Starr Indemnity & Liability Company v. JT2, Inc.*,
 No. 117-CV-00213-DAD BAM, 2018 WL 1142207 (E.D. Cal., Mar. 2, 2018) ........................24

*Stearns v. Select Comfort Retail Corp.*,
 763 F. Supp. 2d 1128 (N.D. Cal. 2010) ................................................................................11

*Stonebrae, L.P. v. Toll Bros., Inc.*,
 No. C–08–0221 EMC, 2010 WL 114010 (N.D. Cal. Jan. 7, 2010) ........................................12

*Sustainable Ranching Partners, Inc. v. Bering Pac. Ranches Ltd.*,
 No. 17-CV-02323-JST, 2018 WL 1696805 (N.D. Cal. Apr. 6, 2018) ....................................19

*Swartz v. KPMG LLP*,
 476 F.3d 756 (9th Cir. 2007) .................................................................................................8

*Syntek Semiconductor Co., Ltd. v. Microchip Tech., Inc.*,
 307 F.3d 775 (9th Cir. 2002) ...............................................................................................17

*United States v. Philadelphia Nat'l Bank*,
 374 U.S. 321 (1963) ...........................................................................................................16

*United States v. Shimer*,
 367 U.S. 374 (1961) ...........................................................................................................15

*United States v. W. Pac. R.R. Co.*,
 352 U.S. 59 (1956) .............................................................................................................17

*Vashistha v. Martin*,
 No. CV-97-4758 JMI (CTX), 1998 WL 656568 (C.D. Cal., July 10, 1998) .........................24

*Vavak v. Abbott Labs., Inc.*,
 No. SA-CV 10-1995 JVS RZX, 2011 WL 10550065 (C.D. Cal. June 17, 2011) ...................19

*Vess v. Ciba-Geigy Corp. USA*,
 317 F.3d 1097 (9th Cir. 2003) .............................................................................................3, 8

*In re Wal-Mart Stores, Inc. Wage and Hour Litigation*,
 505 F.Supp.2d 609 (N.D. Cal. 2007) ...................................................................................24

*Warth v. Seldin*,
 422 U.S. 490 (1975) ...........................................................................................................10

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
 No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) .........................19, 20

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
 313 F.Supp.3d 1113 (N.D. Cal. 2018) .................................................................................25

*Young Am.'s Found. v. Napolitano*,
 No. 17-CV-02255-MMC, 2018 WL 1947766 (N.D. Cal. Apr. 25, 2018) ..............................23

**Statutes**

Cal. Bus. & Prof. Code § 17200, et seq. ...................................................................................1

Cal. Bus. & Prof. Code § 17500 ..............................................................................................1

Cal. Civ. Code § 1750 .............................................................................................................1

Cal. Civ. Code § 3294(a) ................................................................................................24

**Other Authorities**

7 C.F.R. § 2.22(a)(1)(iii) (2011) ....................................................................................18

7 C.F.R. § 2.79(a)(8)(viii) (2011) ..................................................................................18

75 Fed. Reg. 22,363 ............................................................................................4, 16, 18

75 Fed. Reg. 22,366 ..........................................................................................................5

Agricultural Marketing Act of 1946 ..............................................................................18

Agricultural Marketing Service § 52.1539 ................................................................5, 16

Agricultural Marketing Service, USDA, § 52.1534(a) ..............................................5, 16

California's Consumers Legal Remedies Act ("CLRA") ...................................... *passim*

California's False Advertising Law ("FAL") ...................................................... *passim*

California's Unfair Competition Law ("UCL") .................................................... *passim*

Fed. R. Civ. P. 9(b) ................................................................................................1, 8, 9

Fed. R. Civ. P. 12(b)(6) ..............................................................................................3, 23

https://www.ams.usda.gov/about-ams ............................................................................18

https://www.ams.usda.gov/sites/default/files/media/Olive_Oil_and_Olive-
    Pomace_Oil_Standard%5B1%5D.pdf ........................................................................5

U.S. Const. Art. III, cl. 2 ..........................................................................................10, 11

U.S. Const. Art. VI, cl. 2 ................................................................................................15

U.S. Const. Sup. Clause ..................................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1       <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2   **I.      INTRODUCTION**

3           Plaintiff Shelly Robinson ("Plaintiff") alleges that Defendant The J.M. Smucker Company's

4   ("Defendant" or "Smucker") no-stick spray products' labeling and packaging for the "100% EXTRA

5   VIRGIN Olive Oil NO-STICK SPRAY" ("Crisco EVOO" or "the Product") is false. Plaintiff claims

6   that Crisco EVOO is not, in fact, extra virgin olive oil. The <u>only</u> basis for this allegation, however, is

7   a reference to "clinical testing conducted by a leading laboratory" measuring seven "key variables"

8   that Plaintiff claims "establishes that Crisco EVOO is not Extra Virgin Olive Oil." First Amended

9   Complaint ("FAC") ¶¶ 2, 15.

10          Defendant filed a motion to dismiss Plaintiff's original complaint on October 15, 2018 on the

11  grounds that Plaintiff failed to state a cause of action and lacked standing. (ECF 20.) In response,

12  Plaintiff amended her complaint. (ECF 22.) Despite the opportunity to do so, Plaintiff's FAC does not

13  provide further allegations to support her claims and instead attempts to avoid dismissal for a lack of

14  standing by omitting prior factual allegations. The FAC remains devoid of sufficient factual

15  allegations to assert a cause of action. Specifically, it does not cite a specific standard for establishing

16  the grade of olive oil. Nor does the FAC allege testing methods, let alone the test results. Plaintiff does

17  not even begin to explain how the "key variables" tested for are relevant or applicable to extra virgin

18  olive oil quality or grade. Plaintiff makes the conclusory and unsupported allegation that an

19  unidentified number of Crisco EVOO bottles failed some unidentified test. That is not enough to state

20  a plausible claim for relief.

21          On behalf of herself and a California putative class, Plaintiff asserts a request for relief based

22  on: (Claim 1) violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code

23  § 1750; (Claim 2) violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code

24  § 17500; (Claim 3) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.

25  Code §§ 17200, et seq.; and (Claim 4) negligent misrepresentation.

26          Plaintiff's claims fail for numerous reasons. <u>First</u>, Plaintiff has failed to state a plausible cause

27  of action. <u>Second</u>, Plaintiff's fraud causes of action fail to satisfy Federal Rule of Civil Procedure 9(b).

28  <u>Third</u>, Plaintiff lacks standing. <u>Fourth</u>, Plaintiff's claims are disguised substantiation claims that are

1    barred under *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). Fifth, Plaintiff's claims

2    are preempted by federal regulations. Sixth, Plaintiff's claims are barred by the primary jurisdiction

3    doctrine. Seventh, Plaintiff's cause of action for negligent misrepresentation fails under California's

4    economic loss rule. Eighth, Plaintiff's UCL claims fail because (1) the extra virgin olive oil

5    representation is not unfair under any of the prongs, (2) the representation does not violate any law,

6    statute, or regulation, and (3) the representation would not deceive or mislead a reasonable consumer.

7    Ninth, Plaintiff's FAL (Claim 2) and UCL (Claim 3) claims fail because she has an adequate remedy

8    at law. Last, Plaintiff fails to allege facts to support an award of punitive damages.

9         For these reasons, as set forth below, Defendant's motion to dismiss should be granted without

10   leave to amend.

11   **II.     STATEMENT OF ALLEGED FACTS**

12        On August 2, 2018, Plaintiff filed this action, alleging that Defendant's claim of "100%

13   EXTRA VIRGIN Olive Oil" in the Crisco® 100% EXTRA VIRGIN Olive Oil NO-STICK SPRAY

14   product is false and deceptive because "extensive clinical testing conducted by a leading laboratory"

15   measuring seven "key variables" "conclusively established that Crisco EVOO is not Extra Virgin

16   Olive Oil." (ECF 1, Compl. ¶¶ 1-3, 15.) Defendant filed a motion to dismiss the original complaint for

17   failure to state a claim and lack of standing. (ECF 20.) Specifically, Defendant argued that Plaintiff

18   failed to sufficiently allege that Crisco EVOO is not extra virgin olive oil under any applicable

19   standard, and that Plaintiff lacked standing because she purchased the Product with the "dual purpose"

20   of consumption and laboratory testing. (*Id*.) Plaintiff filed her FAC on October 24, 2018. (ECF 20.)

21   But Plaintiff's amendments do not remedy any defects warranting dismissal of her claims.

22        Plaintiff alleges that she purchased Crisco EVOO "for personal consumption during the last

23   four years at Wal Mart in Antioch, California, and other locations within the Northern District of

24   California." (FAC ¶¶ 9, 14.) She discloses no other details about the transactions—such as the date of

25   her purchases, how much she paid, or the lot code of the bottles. The FAC states that Plaintiff

26   purchased and consumed Crisco EVOO in reliance on Defendant's label that the Product is extra virgin

27   olive oil. (*Id*. ¶¶ 14, 16.) However, in Plaintiff's original complaint, she alleged that she purchased the

28   Product for the "dual purpose of consumption and determining its authenticity as Extra Virgin Olive

Oil." (ECF 1, Compl. ¶14.) By omitting this material fact in the FAC, Plaintiff hopes to avoid dismissal for lack of standing. Notably, Plaintiff does not provide additional allegations regarding her decision to take the Crisco EVOO to a laboratory. Thus, by Plaintiff's own allegations, she did not believe the Product was extra virgin olive oil at some point, and yet she continued to purchase and consume the Product. Moreover, Plaintiff's FAC provides no further information about this mystery clinical test—such as the method for testing, the number of bottles tested, the laboratory conducting the test, the standards applied, or even the test results.

## III.     LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). Stripped of conclusory or implausible allegations, the remaining "non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Additionally, where a plaintiff proceeds on theories of fraud, as here, she must allege "the who, what, when, where, and how" of the alleged fraudulent conduct, with enough "specific[ity] . . . to give defendants notice of the particular misconduct" alleged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). None of Plaintiff's claims satisfy these standards.

Although a motion to dismiss may be granted with leave to amend, leave to amend is not required where "any amendment would be futile." *Leadsinger, Inc. v. BMG Music Publ'g*, 429 F. Supp. 2d 1190, 1197 (C.D. Cal. 2005); *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), overruled on other grounds by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), (citation omitted) (futility means that "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense").

1   **IV.    ARGUMENT**

2        **A.    Plaintiff Fails to State a Plausible Cause of Action**

3        "In an action for false advertising under the UCL and CLRA, the plaintiff 'bears the burden of

4   proving the defendant's advertising claim is false or misleading.'" *Stanley v. Bayer Healthcare LLC*,

5   No. 11-CV-862-IEG BLM, 2012 WL 1132920, at *3 (S.D. Cal. Apr. 3, 2012) (quoting *Nat'l Council*

6   *Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1342 (2003)). To survive

7   a motion to dismiss, a plaintiff must allege facts that support an inference that the alleged advertising

8   is false. *Dennis v. Ralph Lauren Corp.*, No. 16-CV-1056-WQH-BGS, 2016 WL 7387356, at *4 (S.D.

9   Cal. Dec. 20, 2016) (dismissing UCL, CLRA, and FAL claims). A plaintiff must also plausibly allege

10  that consumers are likely to be misled. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (plaintiff

11  must plausibly allege that the label claim renders the label false or misleading to the reasonable

12  consumer).

13       Plaintiff bases her statewide class claims on unwarranted deductions of fact and conclusory

14  allegations. Plaintiff concludes that Defendant's representation that the olive oil in the Product is extra

15  virgin olive oil is false based on an unidentified laboratory test. Armed with this unidentified test,

16  Plaintiff makes only a conclusory allegation that the oil is not extra virgin olive oil. But Plaintiff

17  provides no specific test results, or any specific standard against which to compare those test results.

18  On this meager allegation alone, Plaintiff seeks to represent a statewide class for alleged consumer

19  law violations and negligent misrepresentation. This allegation is insufficient to state a cause of action.

20       *First*, Plaintiff does not allege any facts to support her allegation that laboratory results

21  establish that Crisco EVOO fails to meet the standards established by the Agricultural Marketing

22  Service ("AMS") of the United States Department of Agriculture ("USDA") for extra virgin olive

23  oil—or any standard for that matter.

24       The AMS has established standards for grades of olive oil to harmonize U.S. olive oil grade

25  standards with internationally recognized standards of quality. *See* United States Standards for Grades

26  of Olive Oil and Olive-Pomace Oil, 75 Fed. Reg. 22,363 (Apr. 18, 2010). For example, the AMS

27  standards for olive oil define extra virgin olive oil as virgin olive oil that has "excellent flavor and

28  odor (median of defects equal to zero and median of fruitiness greater than zero) and a free fatty acid

content . . . of not more than 0.8 grams per 100 grams and meets the additional requirements as outlined in §52.1539, as appropriate." Agricultural Marketing Service, USDA, § 52.1534(a).[1] The AMS standard for extra virgin olive oil requires quality tests such as flavor, odor, color, free fatty acid content, peroxide value, and UV-light absorbance, and purity tests to determine olive oil origin and degree of processing, if any. *Id.*

The AMS grade standards "divide tests into three categories: Mandatory (Table I), Confirmatory (Table II), and Optional (Table III)." 75 Fed. Reg. 22,366. For example, below is a copy of Table I, setting out the test requirements to ascertain the grade of olive oil.

**§52.1539    Ascertaining the grade.**

The U.S. grades of olive oil or olive-pomace oil must meet the following minimum requirements, of the respective grades listed in Table I, as appropriate.

**TABLE I**

| Quality Criteria | US Extra Virgin Olive Oil | US Virgin Olive Oil | Lampante Virgin Olive Oil[1/] | US Refined Olive Oil | US Olive Oil | US Olive-pomace Oil | US Refined Olive-pomace Oil | US Crude Olive-pomace Oil |
|---|---|---|---|---|---|---|---|---|
| (a)  Organoleptic Characteristics | | | | | | | | |
|   - Odor And Flavor | Excellent | Good | Poor | Acceptable | Good | Good | Acceptable | N/A |
|   - Odor And Flavor (On A Continuous Scale): | | | | | | | | |
| • Median Of Defect ($M_d$) | $M_d = 0$ | $0 < M_d \leq 2.5$ | $M_d > 2.5$[2/] | N/A | N/A | N/A | N/A | N/A |
| • Median Of The Fruity ($M_f$) | $M_f > 0$ | $M_f > 0$ | N/A | N/A | N/A | N/A | N/A | N/A |
| • Color | Yellow To Green | Yellow To Green | Yellow To Green | Light Yellow | Light Yellow To Green | Light Yellow To Green | Light Yellow To Brownish Yellow | Dark Green, Brown, Or Black |
| (b)  Free Fatty Acid Content, % m/m Expressed As Oleic Acid | ≤ 0.8 | ≤ 2.0 | > 2.0 | ≤ 0.3 | ≤ 1.0 | ≤ 1.0 | ≤ 0.3 | No limit |
| (c)  Peroxide Value, In Milleq. Peroxide Oxygen Per kg/oil | ≤ 20 | ≤ 20 | No Limit | ≤ 5 | ≤ 15 | ≤ 15 | ≤ 5 | No limit |

1/  The criteria in (a), (b), and (c) is not required to be concurrent; one is sufficient (for lampante oil only).
2/  Or when the median of the defect attribute is less than or equal to 2.5 and the median of the fruity attribute is equal to 0.

---

[1] United States Department of Agriculture, Agricultural Marketing Service, United States Standards for Grades of Olive Oil and Olive-Pomace Oil, effective Oct. 25, 2010, *available at* https://www.ams.usda.gov/sites/default/files/media/Olive_Oil_and_Olive-Pomace_Oil_Standard%5B1%5D.pdf.

| | US Extra Virgin Olive Oil | US Virgin Olive Oil | Lampante Virgin Olive Oil | US Refined Olive Oil | US Olive Oil | US Olive-pomace Oil | US Refined Olive-pomace Oil | US Crude Olive-pomace Oil |
|---|---|---|---|---|---|---|---|---|
| **Quality Criteria** | | | | | | | | |
| (d) Absorbency In Ultraviolet (UV) (K% 1cm) | | | | | | | | |
| - 270 nm | ≤ 0.22 | ≤ 0.25 | N/A | ≤ 1.10 | ≤ 0.90 | ≤ 1.70 | ≤ 2.00 | N/A |
| - Δ K | ≤ 0.01 | ≤ 0.01 | N/A | ≤ 0.16 | ≤ 0.15 | ≤ 0.18 | ≤ 0.20 | N/A |
| - 232 nm | ≤ 2.50 [5/] | ≤ 2.60 [5/] | N/A | N/A | N/A | N/A | N/A | N/A |
| **Purity Criteria** | | | | | | | | |
| (e) Fatty Acid Composition As Determined By Gas Chromatography (% m/m Methyl Esters) | -Arachidic Acid  (C20:0) ≤ 0.6<br>-Behenic Acid (C22:0)≤ 0.2 [3/]<br>-Gadoleic Acid (Eicosenoic) (C20:1) ≤ 0.4<br>-Heptadecanoic Acid (C17:0) ≤ 0.3<br>-Heptadecenoic Acid(C17:1) ≤ 0.3<br>-Lignoceric Acid (C24:0) ≤ 0.2<br>-Linoleic Acid (C18:2) 3.5 – 21.0 | | | | -Linolenic Acid  (C18:3) ≤ 1.5 [4/]<br>-Myristic Acid (C14:0) ≤ 0.05<br>-Oleic Acid (C18:1) 55.0 – 83.0<br>-Palmitoleic Acid (C16:1) 0.3 – 3.5<br>-Palmitic Acid (C16:0) 7.5 – 20.0<br>-Stearic Acid (C18:0) 0.5 – 5.0 | | | |
| (f) Trans Fatty Acid (T) Content (%) C18:1T [5/] | ≤ 0.05 | ≤ 0.05 | ≤ 0.10 | ≤ 0.20 | ≤ 0.20 | ≤ 0.40 | ≤ 0.40 | ≤ 0.20 |
| (g) Trans Fatty Acid Content (%) C18:2T+C18:3T | ≤ 0.05 | ≤ 0.05 | ≤ 0.10 | ≤ 0.30 | ≤ 0.30 | ≤ 0.35 | ≤ 0.35 | ≤ 0.10 |

3/   Limit raised to ≤ 0.3 for olive-pomace oils.

4/   Linolenic acid values between 1.0 and 1.5 percent would be subject to further testing listed in Table II.

5/   Fatty acid with 18 Carbon atoms (C) and one *trans* isomer (T)

6/   Commercial partners in the country of retail sale may require compliance.

| Purity Criteria | US Extra Virgin Olive Oil | US Virgin Olive Oil | Lampante Virgin Olive Oil | US Refined Olive Oil | US Olive Oil | US Olive-pomace Oil | US Refined Olive-pomace Oil | US Crude Olive-pomace Oil |
|---|---|---|---|---|---|---|---|---|
| (h) Desmethylsterol Composition (% Total Sterol) | - Brassicasterol ≤ 0.1 [7/]<br>- Campesterol ≤ 4.5 [8/]<br>- Cholesterol ≤ 0.5<br><br>- Delta – 7 Stigmastenol ≤ 0.5<br><br>- Stigmasterol < Campesterol In Edible Oils<br><br>Clerosterol + Sitostanol + Beta-Sitosterol + Delta 5-24-Stigmastadienol + Delta-5-23-Stigmastadienol+ Delta-5-Avenasterol ≥ 93.0 | | | | | | | |
| (i) Total Sterol Content (mg/kg) | ≥1000 | ≥1000 | ≥1000 | ≥1000 | ≥1000 | ≥1600 | ≥1800 | ≥2500 |
| (j) Stigmastadiene Content (mg/kg) | ≤0.15 | ≤0.15 | ≤0.50 | N/A | N/A | N/A | N/A | N/A |

7/   Limit raised to ≤ 0.2 for olive-pomace oils.

8/   Campesterol values between 4.0 and 4.5 would be subject to further testing listed in Table II.

6

1   Plaintiff's FAC makes no mention of this federal standard at all, even though Defendant

2   identified this standard in its motion to dismiss Plaintiff's original complaint. (ECF 20.) Plaintiff

3   merely states that the Product failed some unidentified ad hoc test for extra virgin olive oil but provides

4   no details. (FAC ¶¶ 2, 15.) Plaintiff alleges only that the unidentified laboratory tested seven "key

5   variables," specifically, (1) Insoluble Impurities, (2) Free Fatty Acid, (3) Peroxide Value (Acetic

6   Acid-Isooctane Method), (4) Specific Extinction, Ultraviolet Absorption, (5) Sensory Analysis,

7   (6) Copper (ICP-AES), and (7) Moisture & Volatile Content. (FAC ¶ 15.) But Plaintiff does not allege

8   what standard the laboratory relied on. The FAC is completely lacking in any facts regarding this

9   alleged test—such as when it was conducted, what laboratory conducted the test, or how many bottles

10  were tested. Plaintiff makes no attempt to provide the test results, identify any applicable extra virgin

11  olive oil standards, or provide any details explaining why the Product is "not" extra virgin olive oil.

12  That the Product allegedly did not pass this purported testing is a conclusion—not a factual allegation.

13  Defendant is left guessing whether the alleged test complied with AMS standards and how the

14  Product failed the test—if it even did at all. Thus, Plaintiff's allegations regarding the laboratory results

15  are irrelevant and do nothing to support Plaintiff's claim that Crisco EVOO is "not Extra Virgin Olive

16  Oil." As such, there are no facts to support a claim that Plaintiff received anything other than what

17  was represented. Without the standard relied on or test results, Plaintiff fails to provide the basic factual

18  allegations necessary to allege that Defendant's "Extra Virgin Olive Oil" representation on Crisco

19  EVOO is in fact false.

20  *Second*, Plaintiff attempts to extrapolate this facially insufficient laboratory test to allege that

21  because she purchased and tested Crisco EVOO, all of the bottles in California must be equivalent.

22  But without an appropriate testing protocol or statistical analysis that the test can be generalized across

23  the entire production of Crisco EVOO, the purported testing results are meaningless. *See Meyer v.*

24  *Colavita USA Inc.*, 10-61781-CIV, 2011 WL 13216980, at *5 (S.D. Fla. Sept. 13, 2011) (dismissing

25  claims of "fake" extra virgin olive oil premised on U.C. Davis study where study was criticized as

26  "failing to include a statistically significant sample size and conforming to its standardized sensory

27  testing procedures." The court noted that the study "does little to support an inference that consumers

28

7

1    purchasing Defendants' extra virgin olive oil in Florida have been wronged or sold 'fake' olive oil.").

2    As such, Plaintiff's factual allegations are still woefully inadequate, and her claims must be dismissed.

3         Accordingly, under established Ninth Circuit precedent, Plaintiff fails to allege that the extra

4    virgin olive oil claim is false or misleading or plausibly plead that reasonable consumers are likely to

5    be misled.

6         **B.    Plaintiff Fails to Satisfy the Pleading Requirements of Rule 9(b)**

7         Plaintiff's fraud-based allegations also should be dismissed because Plaintiff has failed to plead

8    her claims with the heightened particularity required by Rule 9(b). A plaintiff alleging fraud "must

9    state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Where a plaintiff

10   chooses to allege fraudulent conduct and relies on the UCL, FAL, or CLRA for such claims, the claim

11   is "grounded" in or "sound[s] in fraud" such that a claim "must satisfy the particularity requirement

12   of [Rule] 9(b)." *Vess*, 317 F.3d at 1103-04; *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-27

13   (9th Cir. 2009) (claims under the CLRA and UCL that sound in fraud must satisfy Rule 9(b)'s

14   heightened pleading requirement). The allegations must be "specific enough to give defendants notice

15   of the particular misconduct which is alleged to constitute the fraud charged so that they can defend

16   against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780

17   F.2d 727, 731 (9th Cir. 1985). "Averments of fraud must be accompanied by 'the who, what, when,

18   where, and how' of the misconduct charged." *Kearns,* 567 F.3d at 1124; *Avazian v. Genworth Life &*

19   *Annuity Ins. Co.*, No. 2:17-CV-06-459-RGK-JEM, 2017 WL 6025330, at *3 (C.D. Cal. Dec. 4, 2017).

20   To that end, the allegations must contain "an account of the 'time, place, and specific content of the

21   false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v.*

22   *KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Additionally, "the plaintiff must plead facts explaining

23   why the statement was false when it was made." *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1152

24   (S.D. Cal. 2001) (citation omitted).

25        Here, Plaintiff has wholly failed to explain the circumstances of her purchases. Plaintiff

26   attempts to remedy this by adding that Plaintiff purchased the Product "at Wal Mart." (FAC ¶ 9.) The

27   FAC still lacks key details, such as the date, the particular bottle and lot, and the price paid. And she

28   does not allege when or how she allegedly learned that the Product was not extra virgin olive oil. She

                                                        8

1 | provides no details about her motivation and reason for purchasing the Product. Indeed, Plaintiff
2 | omitted previously asserted allegations that she purchased the Product with the "dual purpose" of
3 | consuming and testing it. (ECF 1.)

4 |      Moreover, Plaintiff's FAC is based solely on alleged "clinical testing conducted by a leading
5 | laboratory." (FAC ¶ 15.) But Plaintiff does not identify the name of the laboratory, the date of the
6 | testing, the number of bottles tested, the standard relied on for the testing, or the test results themselves.
7 | *See Padilla v. Costco Wholesale Corp.*, No. 11-C-7686, 2012 WL 2397012, at *4 (N.D. Ill. June 21,
8 | 2012) (dismissing Illinois Consumer Fraud Act claims for failure to meet Rule 9(b)'s particularity
9 | requirements where plaintiff alleged that "numerous clinical studies" have shown the products "do not
10 | work" but did not state why or how the products did not work). Plaintiff's allegations are merely a
11 | vague claim that Crisco EVOO "is not" extra virgin olive oil—this meager allegation is not "specific
12 | enough to give [Defendant] notice of the particular misconduct." *Semegen*, 780 F.2d at 731.

13 |      Instead of providing more specific factual allegations, Plaintiff now alleges that Defendant
14 | "knew its conduct was unauthorized, inaccurate, and misleading," (FAC ¶ 48); that the Product is
15 | "intentionally intended to prevent the consumer from knowing the true quality of the Crisco EVOO
16 | product," (*id*. at ¶ 49); and that Defendant "knew or should have known, through the exercise of
17 | reasonable care that the Crisco EVOO product was and continues to be misbranded." (*Id.* at ¶ 51.)
18 | While Rule 9(b) states that intent "may be averred generally," (Fed. R. Civ. P. 9(b)) "nothing in the
19 | Federal Rules of Civil Procedure relieves a plaintiff of the obligation to 'set forth facts from which an
20 | inference of scienter could be drawn.'" *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 968
21 | (N.D. Cal. 2008), *aff'd* 322 F. App'x. 489 (9th Cir. 2009) (quoting *Cooper v. Pickett*, 137 F.3d 616,
22 | 628 (9th Cir. 1997)). Conclusory allegations of intent, such as those here, fail to specify "with the
23 | particularity required by Fed .R. Civ. P. 9(b), those facts necessary to breath legal life into the words."
24 | *In re First Magnus Financial Corp.*, No. 4:07-BK-01578-JMM, 2010 WL 779318, at *5 (Bankr. D.
25 | Ariz., Mar. 3, 2010).

26 |      Especially given that Plaintiff's claims rely exclusively on these purported test results,
27 | Plaintiff's critical omissions are fatal to her FAC. Indeed, without the test results, the standard used,
28 | or the lot tested, Defendant cannot prepare a defense and her fraud-based claims should be dismissed.

### C. Plaintiff Lacks Standing

Article III, § 2 of the U.S. Constitution establishes that for subject matter jurisdiction to exist in federal court there must be a true "case or controversy." An essential element of this requirement is that there must be an injured plaintiff. Plaintiff, however, has failed to allege facts that would demonstrate a concrete and particularized injury that she herself suffered. Absent such an injury, she lacks standing and the FAC must be dismissed.

The Supreme Court has explained that "the irreducible constitutional minimum" of standing requires that three elements be satisfied. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The plaintiff bears the burden of "clearly . . . alleg[ing] facts demonstrating" each of these elements in the complaint. *Spokeo*, 136 S. Ct. at 1547; *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

The first element—injury in fact—requires a plaintiff to show an invasion of a protected interest that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548. A "particularized" injury is one that affects a plaintiff personally and in an individualized way. *Id*. But satisfying the particularity requirement alone is not enough. For an injury in fact to exist, it must also be "concrete," meaning the injury "must be 'de facto'; that is, it must actually exist." *Id*. The mere existence of a statutory right and alleged violation, as Plaintiff asserts here, does not by itself satisfy the concreteness requirement. In other words, matters such as bare procedural violations of a statute do not suffice because, for example, "not all inaccuracies cause harm or present any material risk of harm." *Id*. at 1550. Rather, a "concrete" injury is one that "must actually exist." *Id*. at 1548. It must be "'real', and not 'abstract.'" *Id*.

#### 1. Plaintiff has not suffered an injury-in-fact

Plaintiff has no standing to assert her claims because she has not plausibly alleged that she purchased and consumed oil that was not extra virgin. As discussed above, Plaintiff fails to allege that the "laboratory" test results establish that the bottles—or bottle—tested were in fact not extra virgin

10

1    olive oil. Moreover, Plaintiff has alleged no facts that plausibly justify extrapolating those results to

2    bottles she or anyone else purchased for consumption.

3          In addition, her original complaint alleged that "Plaintiff and the Class purchased the 'Crisco

4    EVOO' product for the **dual purpose of consuming it and determining its authenticity** as Extra

5    Virgin Olive Oil." (ECF 1, Compl. ¶ 14 (emphasis added).) As Defendant noted in its motion to

6    dismiss the original complaint, this allegation renders Plaintiff without standing, and thus this Court

7    without jurisdiction over her claims. (ECF 20.)

8          Plaintiff cannot rely on the purported laboratory test results retrospectively to manufacture an

9    injury-in-fact personal to her because she purchased the tested bottle or bottles with the "dual purpose"

10   of clinical testing *after* Plaintiff suspected the Product was mislabeled. *See Clapper v. Amnesty Int'l*

11   *USA*, 133 S. Ct. 1138, 1151 (2013) ("[Plaintiffs] cannot manufacture standing merely by inflicting

12   harm on themselves based on their fears of hypothetical future harm that is not certainly impending.");

13   *Nat'l Family Planning & Reproductive Health Ass'n v. Gonzalez*, 468 F.3d 826, 831 (D.C. Cir. 2006)

14   ("We have consistently held that self-inflicted harm doesn't . . . amount to an 'injury' cognizable under

15   Article III . . . [and] would not be fairly traceable to the defendant's challenged conduct."; *Buckland*

16   *v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 815-17 (2007) (dismissing UCL, FAL and CRLA

17   claims where plaintiff purchased defendant's product after suspecting the defendant's advertising

18   contained false and misleading statements), disapproved of on other grounds by *Kwikset Corp. v.*

19   *Super. Ct.*, 51 Cal. 4th 310 (2011). Because Plaintiff alleged that she purchased the Product for the

20   dual purpose of consumption and testing it for authenticity, she cannot claim to have been injured as

21   to any bottle she purchased with the intent of testing.

22         Faced with Defendant's pending motion to dismiss, Plaintiff has attempted to overcome her

23   lack of standing by simply omitting this fact from her FAC. But the Court may disregard Plaintiff's

24   omitted allegation considering it can still be inferred that she bought the tested bottle for a dual

25   purpose, and nothing in her FAC suggests otherwise. Courts in this jurisdiction are skeptical of, and

26   frequently disregard, inconsistent pleadings where no explanation is offered for why the omitted

27   allegation no longer remains true. *See Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128,

28   1144–1145 (N.D. Cal. 2010); *Jones v. Bayer Healthcare LLC,* No. 08–2219 SC, 2009 WL 1186891,

at *3 (N.D. Cal. May 4, 2009) (striking plaintiff's amended pleading because it was factually inconsistent with plaintiff's previous complaint); *Stonebrae, L.P. v. Toll Bros., Inc.,* No. C–08–0221 EMC, 2010 WL 114010, at *8 (N.D. Cal. Jan. 7, 2010) (holding that where allegations in an amended complaint contradict those in a prior complaint the district court need not accept the new alleged facts as true, but that when a party explains the error in a subsequent pleading or by amendment, the trial court must accord the explanation due weight); *Rojas v. Capital One Bank (USA) N.A.*, No. CV 16-09045-AB (SSX) 2017 WL 7806584, at *4 (C.D. Cal., Aug. 14, 2017) (considering prior pleading where plaintiff "appear[ed] to attempt to omit the cited allegation to survive a motion to dismiss, but [] does not explain how the allegation was wrong"). Plaintiff's omission is factually inconsistent with the allegation in her original complaint, and Plaintiff makes no attempt to explain this material change. The Court should see through this ploy and not permit Plaintiff to contradict her pleaded facts for her own self-interest—especially here, where it affects the Court's jurisdiction over her claims.

## 2.      Plaintiff lacks standing to seek injunctive relief

"To establish standing for injunctive relief, a plaintiff must allege not only that he has 'suffered or is threatened with concrete and particularized legal harm,' but also that there is 'a sufficient likelihood that he will again be wronged in a similar way.'" *Richards v. Safeway Inc.*, No. 13-cv-04317-JD, 2014 WL 12703716, at *3 (N.D. Cal. Sept. 22, 2014). Although a plaintiff who purchases an allegedly mislabeled product may satisfy this requirement by alleging that she cannot purchase the product in the future although she would like to (*Davidson v. Kimberly-Clark Corp*, 889 F.3d 956, 969-70 (9th Cir. 2018)), such allegations must be "devoid of any grounds to discount plaintiffs' stated intent to purchase [the product] in the future." *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 527 (N.D. Cal. 2012). In addition, a plaintiff asserting standing under *Davidson* must allege that she regularly visits stores and is confronted with the product at issue. *Davidson*, 889 F.3d at 972.

Here, even though Plaintiff asserts that she "would like to" purchase Crisco EVOO "in the future" if Defendant takes "corrective action" (FAC ¶ 18), she fails to allege that she continues to visit Wal-Mart in Antioch, California or other stores that sell Crisco EVOO, and is confronted with the Product at issue. Her pleading is insufficient to demonstrate that she faces a "threat of imminent or actual harm" which would give her standing under *Ries* and *Davidson*.

### D.     Plaintiff Lacks Standing Under *Kwan v. SanMedica Int'l*

Plaintiff claims that Crisco EVOO is falsely labeled based exclusively on an unidentified laboratory test. However, as discussed above, the alleged test fails to establish that the Product is not extra virgin olive oil because it is not designed to determine whether or not the Product is extra virgin olive oil under the controlling federal regulatory framework. Indeed, the test does not purport to measure whether the Product meets the federal criteria, and there are no factual allegations supporting Plaintiff's claim that the Product fails the criteria.

Stripped of the laboratory test, Plaintiff's FAC is nothing more than a lack of substantiation claim, which must be dismissed under *Kwan*, 854 F.3d 1088. Ninth Circuit precedent provides that individuals may not bring suit under the UCL or the CLRA alleging that advertising claims lack substantiation. *Id.* at 1096. Instead, California law reserves that right to "the Director of Consumer Affairs, the Attorney General, any city attorney, or any district attorney . . . ." *Id.* at 1091 (citing Cal. Bus. & Prof. Code § 17508). This legislation provides prosecuting authorities a means of protecting consumers while limiting "undue harassment of advertisers and is the least burdensome method of obtaining substantiation for advertising claims." *Id.* at 1098.

Because no private right of action exists for a substantiation claim, a plaintiff "must allege facts affirmatively disproving Defendant's claims." *Kwan v. SanMedica Int'l, LLC*, No. 14-CV-03287-MEJ, 2015 WL 848868, at *2 (N.D. Cal. Feb. 25, 2015), *aff'd sub nom. Kwan*, 854 F.3d 1088. Stated another way, "private citizens bringing suit under the UCL or the CLRA" are required to "properly allege ***proof*** that [they] sustained injury from relying on marketing statements that were ***actually false***." *Kwan*, 854 F.3d at 1095 (citations omitted; emphasis added).

In *Kwan*, the Ninth Circuit described the relevant California law, upheld a District Court's dismissal, and outlined what allegations adequately establish actual falsity:

- allegations that cite testing or studies on the formulation that found the formulation did not provide the advertised benefit,

- allegations that cite existing studies demonstrating the advertised claim is categorically impossible to achieve with the product at issue,

- anecdotal evidence that the plaintiffs did not experience the advertised benefit.

13

1    *Id.* at 1091.

2         Allegations that do not support a finding that the advertising claims are "actually false," are

3    insufficient to state a claim under the UCL and CLRA. *Id.*; *see also Engel v. Novex Biotech, LLC*, No.

4    15-15492, 2017 WL 1420347, at *1 (9th Cir. 2017); *Johns v. Bayer Corp.,* No. 09-CV-1935-AJB

5    DHB, 2013 WL 1498965, at *36 (S.D. Cal. Apr. 10, 2013) ("[I]n the absence of affirmative scientific

6    evidence. . . that proves that zinc and vitamin E did not support prostate health, the strength of Bayer's

7    evidence is irrelevant and Plaintiffs' claims are based on 'lack of substantiation' rather than proof of

8    falsity."); *Stanley v. Bayer Healthcare LLC*, No. 11-CV-862-IEG BLM, 2012 WL 1132920, at *4

9    (S.D. Cal. Apr. 3, 2012) ("alleged lack of substantiation does not render claims false and misleading

10   under the UCL or CLRA."); *Fraker v. Bayer Corp.*, No. CVF-08-1564 AWI GSA, 2009 WL 5865687,

11   at *8 (E.D. Cal. Oct. 6, 2009) (granting motion to dismiss where the plaintiff failed to allege that

12   "Defendant's advertising claims with respect to Product are actually false; not simply that they are not

13   backed up by scientific evidence.").

14        Here, the ad hoc and unidentified test does not meet the criteria established by the Ninth

15   Circuit. In the instant case, only the second of the three criteria is in play. Plaintiff makes no claim of

16   performance or benefit that is disproven by her test and she cites to no anecdotal evidence of falsity

17   either. Instead, she relies on her so-called test to demonstrate that the claim is categorically impossible

18   to achieve with the Product at issue. However, given the federal regulatory backdrop for extra virgin

19   olive oil and the specific requirements to meet that classification, the complete absence of any mention

20   of that regulation and how or why it has not been satisfied is fatal to Plaintiff's claim. Where the

21   federal government lays out certain objective criteria and specific numerical values required to meet

22   a classification, one would expect the test commissioned by Plaintiff to demonstrate the extra virgin

23   olive oil classification is categorically impossible to achieve. She has not.

24        Instead, Plaintiff's claims are based on two paragraphs alleging that mystery test results

25   "conclusively establish[]" that Crisco EVOO is "not" extra virgin olive oil. (FAC ¶¶ 2, 15.) However,

26   there is no allegation regarding the test results, let alone what standard was used or how many bottles

27   were tested. With a federal law addressing the exact issue present here, she provides no evidence that

28   the federal law and its accompanying regulations were violated. Her testing allegations fall far short

                                                      14

1   under binding Ninth Circuit precedent as her paltry reference to the purported conclusion cannot allow

2   Defendant or a fact-finder to determine that proof exists that Plaintiff "sustained injury from relying

3   on marketing statements that were ***actually false***." *Kwan*, 854 F.3d at 1095 (emphasis added).

4   In short, Plaintiff references no study or scientific authority, no applicable standards, and no

5   other factual allegations to support the purported laboratory testing results of Crisco EVOO that could

6   conceivably establish it is not extra virgin olive oil. As in *Kwan*, Plaintiff's allegations do not amount

7   to actual falsity and should be dismissed.

8   **E.   Plaintiff's Claims Are Preempted by Federal Regulations**

9   Each of Plaintiff's claims are preempted. Under the Supremacy Clause of the United States

10   Constitution, "state law that conflicts with federal law is 'without effect.'" *Cipollone v. Liggett Group,*

11   *Inc.*, 505 U.S. 504, 516 (1992); U.S. Const. art. VI, cl. 2. Federal law may preempt state law where:

12   (1) Congress expressly indicates its intent to do so ("express preemption"); (2) federal legislation of a

13   particular area is so extensive as to imply Congress intended to occupy the field exclusively ("field

14   preemption"); or (3) there is an actual conflict between the federal law and the state law at issue

15   ("conflict preemption"). *Bank of Am. v. City & County of S.F.*, 309 F.3d 551, 558 (9th Cir. 2001). The

16   Supreme Court has repeatedly held that state law can be preempted by federal regulations and agency

17   requirements, not just federal statutes. *See, e.g.*, *Hillsborough Cty. v. Automated Med. Labs*, 471 U.S.

18   707, 713 (1985). Where Congress has delegated authority to an agency to exercise its discretion in

19   interpreting a statute, the agency's judgments are subject to judicial review only to determine whether

20   the agency exceeded its statutory authority or acted arbitrarily. *See United States v. Shimer*, 367 U.S.

21   374, 381-82 (1961) (quoting *Bates & Guild Co. v. Payne*, 194 U.S. 106, 108-09 (1904)).

22   Conflict preemption applies "'where state law stands as an obstacle to the accomplishment and

23   execution of the full purposes and objectives of Congress.'" *Farina v. Nokia Inc*., 625 F.3d 97, 125

24   (3d Cir. 2010) (internal citation omitted) (finding claims preempted where case would "permit a jury

25   to second-guess the [federal agency]'s conclusion on how to balance of its objectives"); *Geier v. Am.*

26   *Honda Motor Co.*, 529 U.S. 861, 873-75 (2000) (finding claim related to airbag requirement was

27   preempted where a U.S. Department of Transportation regulation provided vehicle manufacturers with

28   a range of choices among different restraint devices).

15

Here, Plaintiff seeks to invoke California's consumer and common laws to regulate extra virgin olive oil standards. (FAC ¶ 15.) To apply California law in this manner would directly conflict with the AMS standards for grades of olive oil. *See* United States Standards for Grades of Olive Oil and Olive-Pomace Oil, 75 Fed. Reg. 22,363 (Apr. 18, 2010). The AMS adopted standards to "facilitate the marketing of olive oil . . . [and] employ terms consistent with the marketplace, provide definitions for olive oil . . . , promote truth in labeling, and provide a basis for enforcement by State and Federal agencies if these products are mislabeled." 75 Fed. Reg. 22,363. As discussed above, the AMS established specific standards to ascertain olive oil grades, including specific testing criteria of both quality and purity to ascertain olive oil grades. *See supra* at 5, AMS § 52.1539, Table I. AMS standards include a specific definition for extra virgin olive oil as virgin olive oil that has "excellent flavor and odor (median of defects equal to zero and median of fruitiness greater than zero) and a free fatty acid content . . . of not more than 0.8 grams per 100 grams. . .)." AMS § 52.1534(a).

Plaintiff's FAC seeks to enforce an unidentified standard regarding the classification of olive oil. There is no indication that the alleged laboratory testing relied on AMS standards for olive oil or that the Product failed to meet any standard. Even so, to the extent that Plaintiff seeks to enforce a *different* standard, Plaintiff's claims are preempted because requiring Defendant to satisfy a standard other than that required by the AMS would be incompatible with federal regulations. As such, Plaintiff's claims are preempted and must be dismissed.

**F.     The Primary Jurisdiction Doctrine Bars Plaintiff's Claims**

The Court should decline to adjudicate these claims because they fall within the primary jurisdiction of the USDA. The primary jurisdiction doctrine "requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 353 (1963). The Court has discretion to apply the doctrine, and use of the doctrine promotes the proper relationship between courts and federal agencies charged with particular regulatory duties. *See Nader v. Allegheny Airlines. Inc.*, 426 U.S. 290, 303 (1976).

The rationale for the primary jurisdiction doctrine is two-fold: (1) it secures the resolution of technical questions of fact through the specialized expertise of the relevant agency before judicial

16

adjudication of legal claims; and (2) it ensures consistency and uniformity in the field the agency has been entrusted to regulate. *See United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956); *accord Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008). As the Supreme Court has explained, "[u]niformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure." *Far East Conference v. United States*, 342 U.S. 570, 574-75 (1952). Thus, the doctrine properly applies where, like in the present case, "enforcement of the claim requires resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *W. Pac. R.R.*, 352 U.S. at 64.

Under the doctrine, courts consider whether adjudication of the issue requires the administrative body's expertise and whether uniformity within the area of regulation is needed. *Syntek Semiconductor Co., Ltd. v. Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002); *see also W. Pac. R.R.*, 352 U.S. at 63-64. Courts analyze four factors: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek*, 307 F.3d at 781.

To the extent that Plaintiff seeks to enforce the standards regulated expressly by the AMS, the primary jurisdiction doctrine applies, and Plaintiff's claims must be dismissed. Plaintiff may not ask this Court to enforce AMS regulations or create a new regulatory standard as these functions are exclusively reserved for that federal agency. *See All One God Faith, Inc. v. The Hain Celestial Group, Inc.*, No. C-09-3517 SI, 2012 WL 3257660, at *9 (N.D. Cal. Aug. 8, 2012) ("*Pom* . . . underscores the importance of deferring to a federal agency's primary jurisdiction where, in order to determine the falsity or misleading nature of a defendant's representations about its product, the court would be required to interpret and apply those products."); *Mut. Pharm. Co. v. Watson Pharm., Inc.*, No. CV 09-5700 PA (RCX), 2009 WL 3401117, at *5 (C.D. Cal. Oct. 19, 2009) ("disputes concerning the content of [the product's] labels and inserts falls even more squarely within the primary jurisdiction

of the FDA"); *Gordon v. Church & Dwight Co.*, No. C-09-5585 PJH, 2010 WL 1341184, at *1 (N.D. Cal. Apr. 2, 2010) ("The court finds that the action must be dismissed because the scope and content of condom labels are within the primary jurisdiction of the U.S. Food and Drug Administration").

The Agricultural Marketing Act of 1946 ("AMA") provides for the development of official U.S. grades to designate different levels of quality. The Secretary of Agriculture delegated his authority under the AMA to the Under Secretary for Marketing and Regulatory Programs, *see* 7 C.F.R. § 2.22(a)(1)(iii) (2011), and, in turn, the Under Secretary has delegated it to the Administrator for the AMS. 7 C.F.R. § 2.79(a)(8)(viii) (2011). The AMS is "charged with facilitating the efficient, fair marketing of U.S. agricultural products, including food, fiber, and specialty crops."[2] The AMS issued the second United States Standards for Grade of Olive Oil in April 2010 (75 Fed. Reg. 22,363), superseding the first issue which had been in effect since March 1948. The AMS has adopted specific and detailed requirements to ascertain the grade of olive oil. Regulation of olive oil grade is a technical area that requires specific testing, as evidenced by the detailed objective criteria setting forth specific numerical values required to achieve certain grades. Since the determination of olive oil grades falls squarely within the AMS's jurisdiction, and this is a matter between Defendant and the AMS, the Court should dismiss the FAC under the primary jurisdiction doctrine.

## G.     Negligent Misrepresentation Fails Under California's Economic Loss Rule

The economic loss doctrine bars Plaintiff's negligent misrepresentation claim, which is based solely on alleged economic injury. The economic loss rule provides that "[i]n actions for negligence in California, recovery of purely economic loss is foreclosed in the absence of '(1) personal injury, (2) physical damage to property, (3) a 'special relationship' existing between the parties, or (4) some other common law exception to the rule.'" *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 820 (N.D. Cal. 2014). "'[P]laintiffs seeking economic losses must be able to demonstrate that either physical damage to property (other than the defective product itself) or personal injury accompanied such losses; if they cannot, then they would be precluded from any tort recovery in strict liability or negligence.'" *Ladore v. Sony Computer Ent. Am., LLC*, 75 F. Supp. 3d 1065, 1075 (N.D. Cal. 2014) (citations omitted). In

---

[2] https://www.ams.usda.gov/about-ams.

1    *Sustainable Ranching Partners, Inc. v. Bering Pac. Ranches Ltd*., the court dismissed a negligent

2    misrepresentation claim, holding that a "claim that prays only for economic damages will be barred

3    by the economic loss rule unless the plaintiff alleges both that the defendant made an affirmative

4    misrepresentation, and that the defendant's misrepresentation exposed the plaintiff to independent

5    personal liability." No. 17-CV-02323-JST, 2018 WL 1696805, at *2 (N.D. Cal. Apr. 6, 2018)

6    (quotation omitted).

7            Here, Plaintiff does not allege personal injury, personal liability, property damage, a special

8    relationship or any common law exception. She alleges only that she would not have purchased the

9    Product or would have paid less for the Product had she known the true nature of the Product. (FAC

10   ¶ 16.) Courts routinely hold that the economic loss doctrine bars negligent misrepresentation claims

11   based on economic injury in consumer class actions. *See, e.g.*, *Minkler*, 65 F. Supp. 3d at 820

12   (negligent misrepresentation claim dismissed pursuant to the "economic loss" rule, where plaintiff

13   alleged she would not have purchased the iPhone 5 had she known of an alleged Apple Maps defect);

14   *Ladore*, 75 F. Supp. 3d 1065 at 1075-76 (negligent misrepresentation claim dismissed pursuant to the

15   "economic loss" rule where plaintiff alleged only economic damages as a result of his purchase of

16   allegedly defective Sony product); *Vavak v. Abbott Labs., Inc*., No. SA-CV 10-1995 JVS RZX, 2011

17   WL 10550065, at *4-6 (C.D. Cal. June 17, 2011) (negligent misrepresentation claims based solely on

18   money damages incurred from the purchase price barred by the "economic loss" rule where purchaser

19   alleged that she would not have paid for allegedly defective baby formula). As Plaintiff has not and

20   cannot establish the required injury to avoid the economic loss doctrine, her negligent

21   misrepresentation claim should be dismissed as a matter of law.

22           **H.      Plaintiff's UCL "Unfair Prong" Claim Lacks Merit**

23           California's UCL prohibits fraudulent, unfair, and unlawful business acts. *Sloan v. Gen.*

24   *Motors LLC*, 287 F. Supp. 3d 840, 865 (N.D. Cal. 2018), *order clarified*, No. 16-CV-07244-EMC,

25   2018 WL 1156607 (N.D. Cal. Mar. 5, 2018). California courts utilize three different tests to determine

26   whether a business practice is "unfair" under the UCL. *In re Yahoo! Inc. Customer Data Sec. Breach*

27   *Litig*., No. 16-MD-02752-LHK, 2017 WL 3727318, at *23 (N.D. Cal. Aug. 30, 2017). Some courts

28   have held that for an act or practice to be unfair "(1) the consumer injury must be substantial; (2) the

                                                        19

1    injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it

2    must be an injury that consumers themselves could not reasonably have avoided." *Id*. This is the "FTC

3    test."

4         Other courts use a "public policy" test, requiring plaintiffs to establish that the challenged

5    practice violates public policy as declared by specific—and applicable—statutory, constitutional, or

6    regulatory provisions. *Hodges v. Apple Inc.*, No. 13-CV-01128-WHO, 2013 WL 4393545, at *5 (N.D.

7    Cal. Aug. 12, 2013); *In re Yahoo!*, 2017 WL 3727318, at *23.

8         Still other courts have held that the court must apply a "balancing test" that defines unfair

9    practices as those that are "immoral, unethical, unscrupulous, or substantially injurious to consumers,"

10   where the utility of the practice does not outweigh the gravity of harm to its alleged victim. *In re

11   Yahoo!*, 2017 WL 3727318, at *23.

12        *First*, Plaintiff fails to state a claim under the FTC test because she cannot allege an injury that

13   she could have reasonably avoided. *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824,

14   839 (2006); *see also In re Yahoo!*, 2017 WL 3727318, at *23. Plaintiff alleged that she purchased the

15   Product with the "dual purpose" of consuming the product as well as "determining its authenticity as

16   Extra Virgin Olive Oil." Although she now omits this reference in her FAC, she does not deny that

17   she purchased the Product to have it tested, and she makes no effort to explain this away in her FAC.

18   Thus, Plaintiff did not rely on the label and does not dispute that she suspected the Product was not

19   extra virgin grade. Accordingly, Plaintiff could have purchased another oil product.

20        *Second*, Plaintiff also fails to state a claim under the public policy test because she cannot

21   "identify an actual policy based on a legal provision that the defendant violated." *Hodges v. Apple

22   Inc.*, 2013 WL 4393545, at *6; *In re Yahoo!*, 2017 WL 3727318, at *23. Indeed, Plaintiff's FAC makes

23   no mention of any public policy whatsoever.

24        *Third*, Plaintiff fails to state a claim under the balancing test because Defendant's challenged

25   practice is not "immoral, unethical, unscrupulous, and causes injury to consumers which outweighs

26   its benefits." *Fardella v. Downey Sav. & Loan Ass'n*, No. 00-4393, 2001 WL 492442, at *3 (N.D. Cal.

27   May 9, 2001). Any allegation that referring to a product as extra virgin olive oil is immoral, unethical,

28

1    or unscrupulous is simply not plausible. *See Ebner*, 838 F.3d at 965 (plaintiff must plausibly allege

2    that the label claim renders the label false or misleading to the reasonable consumer).

3          Plaintiff does nothing more than recite the elements of the balancing test without alleging how

4    consumers derive no benefit from the Product. She never alleges that the Product does not function as

5    intended. Nor does Plaintiff allege that she has suffered any "substantially injurious" effects or harm

6    from using the Product. *Id*. Indeed, Plaintiff does not allege that she experienced any specific ill effects.

7    In sum, Plaintiff has not alleged any plausible injury, and certainly not one that outweighs Defendant's

8    practice of marketing the oil grade of its Product. Accordingly, Plaintiff has failed to plead facts

9    sufficient to state a claim under the UCL "unfairness" prong.

10         **I.      Plaintiff's UCL "Unlawful Prong" Claim Lacks Merit**

11         Plaintiff cannot state a claim under the unlawful prong of the UCL unless she adequately

12   alleges a violation of another law or statute. "By proscribing 'any unlawful' business practice, [the

13   UCL] 'borrows' violations of other law and treats them as unlawful practices that the unfair

14   competition law makes independently actionable." *Khan v. CitiMortgage, Inc.*, 975 F. Supp. 2d 1127,

15   1145 (E.D. Cal. 2013) (quoting *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.,* 20

16   Cal.4th 163, 180, (1999)). A "violation of another law is a predicate for stating a cause of action under

17   the UCL's unlawful prong." *E & E Co. v. Kam Hing Enterprises, Inc.*, No. C-08-871 MMC, 2008 WL

18   4962991, at *5 (N.D. Cal. Nov. 19, 2008) (internal citation and quotation omitted). Thus, "[i]f the

19   borrowed violations of law or predicate claims lack merit, then the unfair competition claim

20   necessarily fails." *Portney v. CIBA Vision Corp.*, No. SA-CV-070854-AGM-LGX, 2009 WL 305488,

21   at *7 (C.D. Cal. Feb. 6, 2009). Plaintiff's UCL claim fails under the unlawful prong because Plaintiff

22   does not allege that Defendant's extra virgin olive oil representation violates any law or statute. As

23   noted above, Plaintiff does not allege that the Product fails to satisfy any federal regulatory standard

24   for olive oil. Nor does Plaintiff identify violations of any other statute or law. To the extent that

25   Plaintiff seeks to use alleged violations of the CLRA and FAL statutes as a predicate for stating a

26   cause of action (*see* FAC ¶ 57), her reasoning is circular and must be rejected. "The proof necessary

27   to establish violation of the CLRA, including reliance, causation and damages, is the *same proof* that

28   would establish a violation of the unlawful prong of the UCL." *Faulk v. Sears Roebuck and Co.*, 11-

21

CV-02159 YGR, 2013 WL 1703378, at *10 (N.D. Cal. Apr. 19, 2013) (emphasis added). As such, using the CLRA and FAL as predicate acts for a UCL unlawful prong violation is logically flawed since it makes little sense that a statute with identical requirements could act as a "predicate violation" of another statute.

In any event, as set forth above, the Product does not violate the FAL or the CLRA. *See Portney*, 2009 WL 305488, at *7 ("If the borrowed violations of law or predicate claims lack merit, then the unfair competition claim necessarily fails.").

## J.   Plaintiff's UCL "Fraudulent Prong" Claim Lacks Merit

Plaintiff's UCL claim fails because she has not plausibly pleaded that any reasonable consumer would be deceived under the facts alleged.  Plaintiff's claim under the UCL's fraudulent prong is governed by the "reasonable consumer test," which requires that she plausibly plead that reasonable consumers are likely to be deceived by the allegedly misleading conduct.  *Ebner*, 838 F.3d at 967 (holding "design and packaging claims under these [FAL, CLRA, and UCL] statutes are governed by the reasonable consumer test"). This test requires more than a "mere possibility" that the packaging "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Id*.  at 965 (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id*.  As in her original complaint, Plaintiff does not, and cannot, satisfy that standard here. A reasonable consumer would understand the label "Extra Virgin Olive Oil" on Crisco EVOO to indicate that the bottle contains extra virgin olive oil, consistent with the governing standards of grade and quality. Plaintiff fails to allege that a reasonable consumer would be deceived or misled for the simple reason that, as discussed above, Plaintiff fails to allege that, under the governing federal standard, the Product is not extra virgin olive oil.

## K.   Plaintiff's UCL and FAL Claims Fail Because There Is an Adequate Remedy
## Available at Law

"[A] plaintiff seeking equitable relief in California must establish that there is no adequate remedy at law available." *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017) (quoting

22

*Philips v. Ford Motor Co.*, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015)). Both "the UCL and FAL provide for only equitable relief." *Munning*, 238 F. Supp. 3d at 1203. Thus, in order to plead a UCL or FAL claim, Plaintiff is required to allege facts showing that she has no adequate remedy at law. *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1259-60 (C.D. Cal. 2003). Courts in this Circuit routinely hold that when a plaintiff has sought (or could seek) money damages for violation of the CLRA based on the same factual predicates, as Plaintiff does here, the plaintiff has an adequate remedy at law and may not seek equitable remedies. *See, e.g.*, *Munning*, 238 F. Supp. 3d at 1203 (collecting cases). Because Plaintiff here has an adequate remedy at law and cannot plead any facts to the contrary, no amendment can cure this deficiency. *See id.* at 1204. Thus, all claims where Plaintiff seeks injunctive relief, restitution, or any other equitable remedy under the FAL, UCL, and CLRA should be dismissed.

**L.     Plaintiff's Prayer for Punitive Damages Should Be Dismissed**

California law provides the governing substantive law for punitive damages, while the Federal Rules of Civil Procedure govern the adequacy of the pleadings. *La Jolla Spa MD, Inc. v. Avidas Pharmaceuticals, LLC*, No. 17-CV-1124-MMA (WVG) 2017 WL 4870374, at *7 (S.D. Cal., Oct. 27, 2017).[3] California federal courts require a complaint seeking punitive damages to include facts sufficient to support its punitive damages claim. *See, e.g.*, *Young Am.'s Found. v. Napolitano*, No. 17-CV-02255-MMC, 2018 WL 1947766, at *12 (N.D. Cal. Apr. 25, 2018) (dismissing a punitive damages claim for lack of factual support); *Gutierrez v. Kaiser Permanente*, No. 217-CV-00897-MCE GGH, 2018 WL 2412319, at *5 (E.D. Cal. May 29, 2018) (noting that a complaint seeking punitive damages under California law "must identify actual facts, as opposed to conclusory allegations

---

[3] Rule 12(b)(6) is the proper vehicle for challenging Plaintiff's prayer for punitive damages. *See Opperwall v. State Farm Fire & Cas. Co.*, No. 17-CV-07083-YGR, 2018 WL 1243085, at *5 (N.D. Cal. Mar. 9, 2018) (Rule 12(f) is the "proper medium" for challenging the sufficiency of punitive damages allegations); *Fernandez v. City & Cty. of San Francisco*, No. C-93-2597 MHP, 1994 WL 117796, at *3 (N.D. Cal. Mar. 14, 1994) ("Even when punitive damages are not available as a matter of law, removal of such damages from the complaint is more appropriate in a motion to dismiss because the request does not fit into any Rule 12(f) categories.").

1  showing that the defendant acted [with oppression, fraud or malice]," and dismissing a complaint with

2  only boilerplate allegations).

3      As an initial matter, it is settled law that punitive damages are not available under both the

4  UCL and FAL. *In re Wal-Mart Stores, Inc. Wage and Hour Litigation*, 505 F.Supp.2d 609, 620 (N.D.

5  Cal. 2007) (citing *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1148 (2003)); *see*

6  *also Martin v. Tradewinds Beverage Co.*, No. CV-16-9249 PSG (MRWX), 2017 WL 1712533, at *11

7  (C.D. Cal. Apr. 27, 2017), *on reconsideration,* No. 16-CV-9249 PSG (MRW), 2018 WL 313123 (C.D.

8  Cal. Jan. 4, 2018) ("Punitive damages are not available under the UCL and FAL."); *Petkevicius v.*

9  *NBTY, Inc.*, No. 314-CV-02616-CAB RBB, 2017 WL 1113295, at *10 (S.D. Cal. Mar. 24, 2017)

10  ("Punitive damages are not recoverable under the UCL or FAL.").

11      Similarly, under California law punitive damages are not recoverable for negligent

12  misrepresentation. *Besser v. Chapple*, No. SA-CV-09-230 DOC (EX), 2009 WL 10698206 (C.D. Cal.,

13  Dec. 3, 2009), at *4 ("The Supreme Court of California has determined that '[p]unitive damages are

14  recoverable in those fraud actions involving intentional, but not negligent, misrepresentations.'

15  *Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226 (Cal. 1995) (internal citations omitted); *see also*

16  *Reid v. Moskovitz*, 208 Cal.App.3d 29, 32 (Cal. Ct. App. 1989)."); *Martin v. Tradewinds*, 2017 WL

17  1712533, at *11 ("'Punitive damages are recoverable in those fraud actions involving intentional, but

18  not negligent, misrepresentations.'") (citation omitted); *Starr Indemnity & Liability Company v. JT2,*

19  *Inc.*, No. 117-CV-00213-DAD BAM, 2018 WL 1142207 (E.D. Cal., Mar. 2, 2018), at *5 ("Punitive

20  damages are not typically available for [negligent misrepresentation] claims."); *Vashistha v. Martin*,

21  No. CV-97-4758 JMI (CTX) 1998 WL 656568 (C.D. Cal., July 10, 1998), at *3 ("Plaintiffs may not

22  seek punitive damages under the remaining cause of action for negligent misrepresentation."). Thus,

23  Plaintiff's prayer for relief for punitive damages under her UCL and FAL claims (Prayer for Relief,

24  (C)), must be dismissed as a matter of law. And to the extent that Plaintiff seeks punitive damages

25  under her negligent misrepresentation claim (Prayer for Relief, (G)), that too must be dismissed.

26      Although punitive damages are an available remedy under the CLRA, such damages are only

27  limited to circumstances of "oppression, fraud, or malice...." Cal. Civ. Code § 3294(a). "Under

28  California law, punitive damages are available to a plaintiff who proves by clear and convincing

24

1    evidence that the defendant is guilty of oppression, fraud, or malice." *Fraher v. Surydevara*, No. 106-

2    CV-01120-AWI-GSAPC, 2009 WL 1371829, at *1–2 (E.D. Cal., May 15, 2009), *report and*

3    *recommendation adopted*, No. 1:06-CV-1120-AWI GSA, 2009 WL 2870100 (E.D. Cal., Sept. 3,

4    2009) (citing Cal. Civ. Code § 3294(a)). However, "a corporate entity cannot commit willful and

5    malicious conduct; instead, 'the advance knowledge and conscious disregard, authorization,

6    ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or

7    managing agent of the corporation.'" *In re Yahoo! Inc. Customer Data Security Breach Litig.*, 313

8    F.Supp.3d 1113, 1147–1148 (N.D. Cal. 2018) (quoting Cal. Civ.Code § 3294(b)). "Therefore,

9    Plaintiffs must plead that an officer, director, or managing agent of Defendants committed an act of

10   oppression, fraud, or malice." *Id.*

11   Plaintiff does not plead support for punitive damages for *any* of her claims, because she fails

12   to allege that any officer, director, or managing agent of Defendant acted with fraud, oppression or

13   malice. Malice is never mentioned in her FAC. Moreover, "bare assertion of conduct described merely

14   as intentional is insufficient to support a request for punitive damages." *Fraher v. Surydevara*, 2009

15   WL 1371829, at *1–2. As Plaintiff makes no such allegations, her punitive damage claim cannot stand.

16   **V.    CONCLUSION**

17   For the foregoing reasons, Defendant respectfully requests that the Court dismiss the FAC in

18   its entirety, with prejudice.

19

20   Dated: November 7, 2018                    WINSTON & STRAWN LLP

21

22                                              By:    */s/ Ronald Y. Rothstein*
                                                       Ronald Y. Rothstein (*pro hac vice*)
23                                                     RRothste@winston.com
                                                       **WINSTON & STRAWN LLP**
24                                                     35 West Wacker Drive
                                                       Chicago, IL 60601-9703
25                                                     Telephone: (312) 558-5600
                                                       Facsimile: (312) 558-5700
26
                                                       Megan L. Whipp (SBN: 319182)
27                                                     MWhipp@winston.com
                                                       **WINSTON & STRAWN LLP**
28                                                     333 South Grand Avenue, 38th Floor
                                                       Los Angeles, CA 90071-1543

Telephone:        (213) 615-1700
Facsimile:        (213) 615-1750

Crista N. Welch (SBN: 312582)
CWelch@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111-5802
Telephone:        (415) 591-1000
Facsimile:        (415) 591-1400

Attorney for Defendant
The J.M. Smucker Company

1

**CERTIFICATE OF SERVICE**

2

3      I hereby certify that on November 7, 2018, I electronically filed the foregoing **NOTICE OF**

4  **MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT;**

5  **MEMORANDUM OF POINTS AND AUTHORITIES** with the Clerk of the Court using the

6  CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

7

8                          /s/ Ronald Y. Rothstein
                        Ronald Y. Rothstein (*Pro Hac Vice*)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1