**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell (Bar No. 202091)
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile:  (949) 706-6469

Attorneys for Plaintiff

# UNITED STATE DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLY ROBINSON, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>THE J.M. SMUCKER COMPANY, an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No. 4:18-cv-04654-HSG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date:           January 31, 2019<br>Time:           2:00 p.m.<br>Courtroom:  2<br>Judge:          Hon. Haywood S. Gilliam, Jr. |

# **TABLE OF CONTENTS**

Page(s)

I.  INTRODUCTION ........................................................................................... 1

II. ARGUMENT .................................................................................................. 3

    A.  Applicable Legal Standard ................................................................ 3

    B.  Plaintiff Has Article III Standing to Sue. ......................................... 3

    C.  Plaintiff Has Standing to Seek Injunctive Relief. ............................ 6

    D.  The Complaint Plausibly Alleges Facts that Testing of Defendant's
        Product by a Leading Laboratory Was Conducted Using the
        Methodology Prescribed by the United States Standards for Grades of
        Olive Oil and Olive-Pomace Oil. ...................................................... 7

    E.  The FAC Satisfies Rule 9(b). ............................................................ 9

        1.  Reliance Is Sufficiently Pled. ............................................... 11

    F.  *Kwan v. Sanmedica Int'l* Does Not Support Dismissal for Lack of
        Statutory Standing. ......................................................................... 13

    G.  Plaintiff's Claims Are Not Preempted. ........................................... 14

    H.  The Primary Jurisdiction Doctrine Does Not Apply. ..................... 14

    I.  The Negligent Misrepresentation Claim Is Subject to an Exception to
        California's Economic Loss Rule. ................................................... 15

    J.  The UCL Claim Should Not Be Dismissed Under the "Unfair" Prong. .......... 16

        1.  Standard for "Unfair" Prong of UCL .................................. 16

        2.  The FAC Has Alleged an "Unfair" Practice Via an "Unethical"
            Practice in Violation of United States Standards for Grades of
            Olive Oil. ............................................................................. 18

        3.  The FAC Has Sufficiently Alleged an "Unfair" Practice Via an
            Established Public Policy. .................................................... 19

            a)  California Decisions Rely Upon Violations of Public
                Policy Originating Beyond California as the Predicate
                of UCL "Unfair" Prong Claims. ................................. 19

        4.  The FAC Has Sufficiently Alleged an "Unfair" Practice Via
            Substantial Injuries. ............................................................ 20

5.   The FAC Has Sufficiently Alleged an "Unfair" Practice Under a Balancing Test. ........................................................................20

6.   Defendant's Argument Is Inappropriate for Resolution via a Motion to Dismiss. ..................................................................21

7.   Defendant's Argument that Plaintiff's Injury Was Reasonably Avoidable Seeks to Apply the FTC Test That the Ninth Circuit Has Expressly Rejected in the UCL "Unfair" Prong Context. ..............21

K.   The UCL Claim Should Not Be Dismissed Under the "Unlawful" Prong. ............................................................................................22

L.   The UCL Claim Should Not Be Dismissed Under the "Fraudulent" Prong Because the FAC Plausibly Alleges Facts Indicating that a Reasonable Consumer Could Be Deceived by the Product. ...............23

1.   Defendant's Characterization of the "Reasonable Consumer" Test Is Incomplete. ............................................................23

2.   The FAC Plausibly Alleges Facts Indicating that a Reasonable Consumer Could Be Deceived by the Product. .......................24

M.   The UCL and FAL Claims Do Not Fail Because of an Adequate Remedy at Law. ..........................................................................24

N.   The Prayer for Punitive Damages Should Not Be Stricken or Dismissed. ...............................................................................25

O.   Leave to Amend Should Be Granted ...............................................25

III.   CONCLUSION ............................................................................25

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Aberin v. American Honda Motor Co., Inc.*,
    No. 16-cv-04384-JST, 2018 WL 1473085 (N.D. Cal. Mar. 26, 2018) (Tigar, J.)......................24, 25

*Bahamas Surgery Ctr., LLC v. Kimberly-Clark Corp.*,
    2017 WL 2120062 (C.D. Cal. May 15, 2017) ..........................................................................13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................................3, 7

*Beltran v. Avon Prods. Inc.*,
    2012 WL 12303424 (C.D. Cal. Dec. 11, 2012) ......................................................................13

*Berson v. Applied Signal Tech., Inc.*,
    527 F.3d 982 (9th Cir. 2008) ..................................................................................................11

*Byler v. Deluxe Corp.*,
    No. 3:16-cv-00493-AJB-JLB, 2016 U.S. Dist. LEXIS 111763 (S.D. Cal. Aug. 19,
    2016)........................................................................................................................................21

*Bruesewitz v. Wyeth LLC*,
    562 U.S. 223, 131 S. Ct. 1068, 179 L.Ed.2d 1 (2011)..........................................................14

*Bruno v. Quten Research Inst., LLC*,
    280 F.R.D. 524 (C.D. Cal. 2011)..............................................................................................6

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ....................................................................................................................6

*Clark v. Time Warner Cable*,
    523 F.3d 1110 (9th Cir. 2008) ................................................................................................14

*Cooks v. The Hertz Corp.*,
    No. 3:15-cv-0652-NJR-PMF, 2016 WL 3022403 (S.D. Ill. Apr. 29, 2016) ..........................20

*Corson v. Toyota Motor Sales, U.S.A., Inc.*,
    2013 WL 10068136 (C.D. Cal. July 18, 2013)......................................................................13

*Daniel v. Ford Motor Co.*,
    806 F.3d 1217 (9th Cir. 2015) ................................................................................................12

*Danvers Motors Co. v. Ford Motor Co.*,
    432 F.3d 286 (3d Cir. 2005)..................................................................................................4, 5

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018).........................................................................................4, 5, 6, 7

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ............................................................................17

*Delano Farms Co. v. California Table Grape Comm'n*,
   No. 1:07-cv-1610 OWW SMS, 2010 WL 2952358 (E.D. Cal. July 26, 2010) ..............................21

*Doe v. United States*,
   58 F.3d 494 (9th Cir. 1995) ............................................................................25

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ............................................................................23

*Ehrlich v. BMW of North America, LLC*,
   801 F. Supp. 2d 908 (C.D. Cal. 2010) ............................................................................13

*Escobar v. Just Born, Inc.*,
   No. 2:17-cv-01826-BRO (PJW), 2017 WL 5125740 (C.D. Cal. June 12, 2017) ............................10

*Fisher v. Monster Beverage Corp.*,
   125 F. Supp. 3d 1007 (C.D. Cal. 2013), *aff'd in part and rev'd in part on other*
   *grounds*, 656 Fed. Appx. 819 (9th Cir. 2016) ............................................................................4

*Friedman v. AARP, Inc.*,
   855 F.3d 1047 (9th Cir. 2017) ............................................................................12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ............................................................................6

*Hendricks v. StarKist Co.*,
   30 F. Supp. 3d 917 (N.D. Cal. 2014) ............................................................................14, 15

*Herremans v. BMW of North Amer., LLC*,
   2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) ............................................................................13

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ............................................................................4

*In re ConAgra Foods Inc.*,
   908 F. Supp. 2d 1090 (C.D. Cal. 2012) ............................................................................10

*In re Hydroxycut Marketing and Sales Practices Litig.*,
   801 F. Supp. 2d 993 (S.D. Cal. 2011) ............................................................................4

*In re NJOY, Inc. Consumer Class Action Litig.*,
   2014 WL 12586074 (C.D. Cal. Oct. 20, 2014) ............................................................................11

*In re Toyota Motor Corp.*,
   790 F. Supp. 3d 1152 (C.D. Cal. 2011) ............................................................................12, 13

*Johnson v. General Mills, Inc.*,
  276 F.R.D. 519 (C.D. Cal. 2011) ..................................................................................13

*Kwan v. Sanmedica Int'l*,
  854 F.3d 1088 (9th Cir. 2017) ......................................................................................13

*Krzyzanowsky v. Orkin Exterminating Co., Inc.*,
  No. C 07–05362 SBA, 2009 WL 481267, at *11–*12 (N.D. Cal. Feb. 24, 2009) ..........15

*Lacey v. Maricopa County*,
  693 F.3d 896 (9th Cir. 2012) ..........................................................................................6

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) ......................................................................................25

*Lozano v. AT&T Wireless Servs., Inc.*,
  504 F.3d 718 (9th Cir. 2007) ..........................................................................17, 18, 21

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................................3

*Marolda v. Symantec Corp.*,
  672 F. Supp. 2d 992 (N.D. Cal. 2009) ............................................................................9

*Massachusetts v. E.P.A.*,
  549 U.S. 497 (2007) ........................................................................................................5

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) ........................................................................................5

*McDonald v. Coldwell Banker*,
  543 F.3d 498 (9th Cir. 2008) ........................................................................................16

*Meyer v. Colavita USA Inc.*,
  2011 WL 13216980 (S.D. Fla. Sept. 13, 2011) ..........................................................8, 9

*Meza v. Verizon Communications, Inc.*,
  2016 WL 4721475 (E.D. Cal. Sept. 9, 2016) ..................................................................4

*Moore v. Kayport Package Exp., Inc.*,
  885 F.2d 531 (9th Cir. 1989) ..........................................................................................9

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) ........................................................................................9, 11

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) ..........................................................................................9

*Orkin Exterminating Co., Inc. v. F.T.C.*,
  849 F.2d 1354 (11th Cir. 1988) ......................................................................19, 20, 21

*Padilla v. Costco Wholesale Corp.*,
  2012 WL 2397012 (N.D. Ill. June 21, 2012) .................................................................11

*Pom Wonderful LLC* v. *Ocean Spray Cranberries, Inc.*,
  642 F. Supp. 2d 1112 (C.D. Cal. 2009) ........................................................................10

*Preminger v. Peake*,
  552 F.3d 757 (9th Cir. 2008) ..........................................................................................5

*Rasmussen v. Apple Inc.*,
  27 F. Supp. 3d 1027 (N.D. Cal. 2014) ...........................................................................11

*Red v. Kraft Foods, Inc.*,
  2012 WL 8019257 (C.D. Cal. Apr. 12, 2012) .................................................................13

*Reid v. Johnson & Johnson*,
  780 F.3d 952 (9th Cir. 2015) ..........................................................................................24

*Riva v. Pepsico, Inc.*,
  82 F. Supp. 3d 1045 (N.D. Cal. 2015) .............................................................................5

*Rojas-Lozano v. Google, Inc.*,
  159 F. Supp. 3d 1101 (N.D. Cal. 2016) ..........................................................................17

*Rooney v. Sierra Pac. Windows*,
  2011 WL 5034675 (N.D. Cal. Oct. 11, 2011) ...................................................................5

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013) ..............................................................................................5

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016).................................................................................................3, 4

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp. v.
  Behrend*, 569 U.S. 27 (2013) ...................................................................................12, 13

*Stiles v. Trader Joe's Co.*,
  No. CV 16-04318 TJH, 2017 WL 3084267 (C.D. Cal. Apr. 4, 2017) .............................24

*Tasion Communications, Inc. v. Ubiquiti Networks, Inc.*,
  2013 WL 4530470 (N.D. Cal. Aug. 26, 2013) .................................................................15

*Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ..........................................................................................5

*Towers Financial Corp. v. Solomon*,
  126 F.R.D. 531 (N.D. Ill. 1989) .......................................................................................9

*United States v. General Dynamics Corp.*,
    828 F.2d 1356 (9th Cir. 1987) ...........................................................................14

*United States v. Philadelphia Nat'l Bank*,
    374 U.S. 321, 83 S. Ct. 1715, 10 L.Ed.2d 915 (1963)..........................................14

*United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*,
    412 U.S. 669 (1973) ...........................................................................................5

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................................9

*Von Koenig v. Snapple Beverage Corp.*,
    713 F. Supp. 2d 1066 (E.D. Cal. 2010) ...............................................................10

*Wilderness Soc., Inc. v. Rey*,
    622 F.3d 1251 (9th Cir. 2010) ............................................................................5

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) .........................................................................23, 24

**State Cases**

*Brady v. Bayer Corp.*,
    26 Cal. App. 5th 1156, 237 Cal. Rptr. 3d 683 (2018) ..........................................24

*Camacho v. Automobile Club of So. Cal.*,
    142 Cal. App. 4th 1394 (2006) .......................................................................17, 21

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (Cal. 1999) ......................................................................16, 17, 18

*Chapman v. Skype Inc.*,
    220 Cal. App. 4th 217 (2013) .......................................................................12, 23

*Colgan v. Leatherman Tool Group, Inc.*,
    135 Cal. App. 4th 663 (2006) ............................................................................23

*Dyna-Med, Inc. v. Fair Employment and Housing Comm'n*,
    43 Cal. 3d 1379 (Cal. 1987) ...............................................................................20

*Engalla v. Permanente Med. Group, Inc.*,
    15 Cal. 4th 951 (1997) .......................................................................................12

*Gregory v. Albertson's, Inc.*,
    104 Cal. App. 4th 845 (2002) .............................................................................17

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ..................................................................................12, 13

*In re Vioxx Class Cases*,
   180 Cal. App. 4th 116 (2009) ......................................................................................12

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (Cal. 2003) ................................................................................16, 18

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ..................................................................................................4

*Lavie v. Proctor & Gamble Co.*,
   105 Cal. App. 4th 496 (2013) ......................................................................................23

*Leoni v. State Bar*,
   39 Cal. 3d 609 (1985) ..................................................................................................24

*Linear Technology Corp. v. Applied Materials, Inc.*,
   152 Cal. App. 4th 115 (2007) ......................................................................................21

*McKell v. Washington Mut., Inc.*,
   142 Cal. App. 4th 1457 (2006) ....................................................................................19

*Meyer v. Sprint Spectrum L.P.*,
   45 Cal. 4th 634 (2009) ..............................................................................................4, 9

*Mirkin v. Wasserman*,
   5 Cal. 4th 1082 (1993) ................................................................................................12

*Morgan v. AT & T Wireless Servs., Inc.*,
   177 Cal. App. 4th 1235 (2009) ..............................................................................12, 16

*Motors, Inc. v. Time Mirror Co.*,
   102 Cal. App. 3d 735 (1980) .......................................................................................17

*Occidental Land, Inc. v. Superior Court*,
   18 Cal. 3d 355 (1976) ..................................................................................................12

*People v. Casa Blanca Convalescent Homes, Inc.*,
   159 Cal. App. 3d 509 (1984) ............................................................................16, 17, 18

*Saunders v. Superior Court*,
   27 Cal. App. 4th 832 (1994) ........................................................................................19

*State Farm Fire & Casualty Co. v. Superior Court*,
   45 Cal. App. 4th 1093 (1996) ..........................................................................16, 17, 18, 19

*Vasquez v. Superior Court*,
   4 Cal.3d 800 (1971) ....................................................................................................12

**Federal Statutes**

Federal Trade Commission Act § 5, 15 U.S.C. § 45(n) ............................................17, 19, 21

United States Food Law ...................................................................................................2

FDA Food Safety Modernization Act ..............................................................................2

**Federal Rules**

Rules of Civil Procedure
    Rule 8(a) ...................................................................................................................3, 7
    Rule 9 ..........................................................................................................................11
    Rule 9(b) ..........................................................................................................9, 10, 11
    Rule 12(b)(1) ...............................................................................................................13
    Rule 12(b)(6) ...........................................................................................3, 7, 13, 21
    Rule 15(a)(2) ...............................................................................................................25

**Federal Regulations**

United States Standards for Grades of Olive Oil and Olive-Pomace Oil, effective
    October 25, 2010 ................................................................................................ *passim*
    § 52.1539 ......................................................................................................................7
        Table I ...............................................................................................................7
        Table I(a) .......................................................................................................7, 8
        Table I(b) ............................................................................................................8
        Table I(c) ............................................................................................................8
        Table I(d) ............................................................................................................8
        Table I(e) ............................................................................................................8
        Table I(f) ............................................................................................................8
        Table I(g) ............................................................................................................8
        Table III[o] .........................................................................................................8
        Table III(p) .........................................................................................................8
        Table III(r) .........................................................................................................8

Notice: United States Standards for Grades of Olive Oil and Olive-Pomace Oil, 75 Fed.
    Register 22363-01, 22363-22364, 2010 WL 1684744 (Apr. 28, 2010) .........................1, 2

**State Statutes**

Business & Proffessions Code
    § 17200 *et seq.* ....................................................................................................... *passim*
    § 17500 *et seq.* ...........................................................................................................*24, 25*

Civil Code
    § 1750 *et seq* ...............................................................................................................12
    § 1760 ..........................................................................................................................12

Health & Safety Code
    § 112877(a)(1) .......................................................................................................2, 19, 22

**Other Authorities**

7 A. Bryan Endres & Nicholas R. Johnson, United States Food Law Update:  The FDA
    Food Safety Modernization Act, Obesity and Deceptive Labeling Enforcement,
    *Journal of Food Law & Policy* 135, 158-59 (Spring 2011) .............................................................2

https://academic.oup.com/fqs/advance-article/doi/10.1093/fqsafe/fyy018/5164291 (last
    visited Nov. 21, 2018) ...................................................................................................................1

Merriam-Webster Dictionary (online) at https://www.merriam-
    webster.com/dictionary/organoleptic (last visited Nov. 20, 2018)...................................................8

Nick Vanstone, et al., Detection of the Adulteration of Extra Virgin Olive Oil by Near-
    infrared Spectroscopy and Chemometric Techniques, *Food Quality and Safety* at 1-
    2 (2018)...........................................................................................................................................1

Legislative Counsel's Digest to Senate Bill 818 (2011-2012 Regular Session) §10 ....................1, 2, 22

Senate Bill 818 (2011-2012 Regular Session).................................................................................2, 22

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

"California grows and processes more than 99 percent of the extra virgin olive oil produced in the United States, and more than 90 percent of California olive oil meets the international standards for top-grade 'extra virgin' as established by the International Olive Council." (Legislative Counsel's Digest to Senate Bill 818 (2011-2012 Regular Session) § 10.) "Extra virgin olive oil (EVOO) is the highest quality olive oil and its health benefits have been extensively studied. . . . In addition to health benefits, olive oil is also desired for its flavour-related qualities. As a healthy and enjoyable product, a large and lucrative global market for EVOO products has formed. . . . Demand for EVOO as a result of health and flavour qualities has resulted in higher selling prices and an overall lucrative industry." Nick Vanstone, *et al.*, Detection of the Adulteration of Extra Virgin Olive Oil by Near-infrared Spectroscopy and Chemometric Techniques, *Food Quality and Safety* at 1-2 (2018) (internal citations omitted).[1] "With the potential for profitability, the olive oil industry has become subject to fraudulent activity. EVOO, being the highest quality olive oil, is logically the most prone to fraud." *Id.* at 2.

In or about 2004, the California Olive Oil Council ("COOC"), an association of domestic olive oil producers, which was concerned by the lack of a definition of olive oil in the U.S., filed a petition with the Agricultural Marketing Service ("AMS") of the U.S. Department of Agriculture to revise the 1948 United States Standards for Grades of Olive Oil to reflect current industry standards commonly accepted in the U.S. and abroad. Notice: United States Standards for Grades of Olive Oil and Olive-Pomace Oil, 75 Fed. Register 22363-01, 22363-22364, 2010 WL 1684744 (Apr. 28, 2010). The COOC made the contention that "some unscrupulous blenders can produce low quality olive oil or olive-pomace oil and market it as extra virgin olive oil at a premium price." *Id.* at 22364. On April 28, 2010, the AMS published a notice that revised such prior standards via the "United States Standards for Grades of Olive Oil and Olive-Pomace Oil" (the "Standards"). 75 Fed. Register 22363-01, 2010 WL 1684744 (Apr. 28, 2010); RJN Ex. 1. The AMS expressly stated that one of the rationales for the

---

[1] The Vanstone *et al.* article is available for viewing online at:
https://academic.oup.com/fqs/advance-article/doi/10.1093/fqsafe/fyy018/5164291 (last visited Nov. 21, 2018).

revision to the prior standards was, in part, to "promote truth in labeling, and provide a basis for enforcement by State and Federal agencies if these products are mislabeled."[2]  75 Fed. Register at 22363; *see also* 7 A. Bryan Endres & Nicholas R. Johnson, United States Food Law Update:  The FDA Food Safety Modernization Act, Obesity and Deceptive Labeling Enforcement, *Journal of Food Law & Policy* 135, 158-59 (Spring 2011) ("In April, amid growing concern that some olive-oil producers and importers are mislabeling their products, the USDA's Agricultural Marketing Service (AMS) announced major revisions to its standards for grades of olive oil and olive-pomace oil.").

In 2011, the California Legislature enacted a statute defining "extra virgin olive oil" consistently with the federal Standards.  (*See* Cal. Health & Safety Code § 112877(a)(1).)  The Legislative Counsel's Digest to Senate Bill 818 (2011-2012 Regular Session) indicates in section 10 that:

> "It is the intent of the Legislature that California's definition of olive oil be consistent with federal standards that have been revised to reflect international standards."

(Legislative Counsel's Digest to Senate Bill 818 (2011-2012 Regular Session) § 10.)

Defendant The J.M. Smucker Co. ("Defendant") contends that the First Amended Complaint ("FAC") filed by Plaintiff Shelly Robinson ("Plaintiff") regarding the mislabeling of Defendant's product known as "Crisco 100% Extra Virgin Olive Oil" (the "Product") as extra virgin olive oil must be dismissed primarily because Defendant *speculates* that the leading laboratory that conducted the tests of the Product referenced in the FAC used a methodology that did not comport with the tests identified in the Standards.  Not so.  A careful analysis of the 7 variables used by the laboratory, mentioned in paragraphs 2 and 15 of the FAC, reflects the fact that each of those variables are tests to be utilized in the Standards.  Defendant's analysis reflects willful ignorance of the relevance of the variables identified in the FAC.  Assuming that this Court rejects Defendant's invitation that this Court simply ignore the ***factual*** allegations in the FAC that a leading laboratory has, in fact, confirmed that

---

[2] Notably, the Standards provide no mechanism for agency enforcement of the Standards.  7 A. Bryan Endres & Nicholas R. Johnson, United States Food Law Update:  The FDA Food Safety Modernization Act, Obesity and Deceptive Labeling Enforcement, *Journal of Food Law & Policy* 135, 160 (Spring 2011).

1   Defendant's Product does not qualify as extra virgin olive oil, the rest of Defendant's frail arguments

2   simply implode.

3        Defendant can engage in discovery to obtain the laboratory results identified in the FAC, and if

4   Defendant disagrees with the methodology used, then surely Defendant will have the opportunity to

5   move for summary judgment on this basis.  Simply put, dismissal at this early stage in the action is

6   premature and inappropriate.  Accordingly, Defendant's instant Motion should be denied in its entirety.

7   **II.     ARGUMENT**

8       **A.     Applicable Legal Standard**

9        Rule 8(a) of the Fed. Rules of Civil Procedure "simply calls for enough fact to raise a

10  reasonable expectation that discovery will reveal evidence" to support the allegations.  *Bell Atlantic*

11  *Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

12       "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

13  allegations." *Bell Atlantic*, 550 U.S. at 555.

14      **B.     Plaintiff Has Article III Standing to Sue.**

15       Defendant contends that Plaintiff lacks Article III constitutional standing to sue because the

16  Complaint fails to plead specific facts that she suffered an injury in fact attributable to Defendant's

17  wrongdoing. (Def.'s Mem. at 10:1-12:12.)  Not so.  The plaintiff must have "(1) suffered an injury in

18  fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

19  redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  A

20  plaintiff must demonstrate that he suffers the threat of an "injury in fact" that is concrete and

21  particularized; the threat must be actual or imminent, not conjectural or hypothetical; it must be "fairly

22  . . . trace[able] to the challenged action of the defendant"; and it must be likely that a favorable judicial

23  decision will prevent or redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

24  (1992).  "At the pleading stage, general factual allegations of injury resulting from the defendant's

25  conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those

26  specific facts that are necessary to support the claim.'" *Id.* at 561.

27      Although Defendant expressly seeks to challenge the sufficiency of Plaintiff's injury in fact

28  allegations, Defendant ignores that the FAC has alleged an economic injury.  "Monetary harm is a

classic form of injury-in-fact." *In re Hydroxycut Marketing and Sales Practices Litig.*, 801 F. Supp. 2d 993, 1002 (S.D. Cal. 2011) (*Danvers Motors Co. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005)); *Fisher v. Monster Beverage Corp.*, 125 F. Supp. 3d 1007, 1020 (C.D. Cal. 2013) ("In order to assert the type of economic injury that Plaintiffs are alleging, they must demonstrate they . . . paid a premium or overpaid for the product."), *aff'd in part and rev'd in part on other grounds*, 656 Fed. Appx. 819 (9th Cir. 2016).

The FAC alleges that Plaintiff purchased the Product, which turned out not to be extra virgin olive oil as demonstrated by clinical testing by a leading laboratory.  (Compl. ¶¶ 2, 15.)  The plausible inference from such allegations is that Plaintiff was promised extra virgin olive oil, which she did not receive, and, thus, paid a premium or overpaid for the Product.  This pleads a cognizable economic injury.[3]  Plaintiff "was made to part with more money than he . . . otherwise would have been willing to expend, i.e., that the consumer paid more than he . . . actually valued the product. That increment, the extra money paid, is economic injury and affords the consumer standing to sue." *Hinojos*, 718 F.3d at 1104 (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 (2011)). "There is no requirement . . . that [the plaintiff] separately plead how much he would have paid for the merchandise had he known its true market value.  *Kwikset* explicitly rejected that argument."  718 F.3d at 1105.  Thus, Plaintiff, here, need not specifically allege how much she would have paid for the Product had she known that it was not, in fact, extra virgin olive oil.

In addition, Plaintiff has suffered an intangible,[4] informational injury as a result of the mislabeling of the Product's packaging.[5]  In *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), the Ninth Circuit held, "This court recognizes a history of lawsuits based on . . . informational

---

[3] A CLRA claim requires only that a plaintiff claim to have suffered "some form of damage." *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009).  "[T]he California Supreme Court made clear that the CLRA's 'any damage' requirement is a capacious one that includes any pecuniary damage as well as opportunity costs and transaction costs that result when a consumer is misled by deceptive marketing practices. . . . [T]he 'any damage' standard includes even minor pecuniary damage . . . ." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013).

[4] In *Spokeo*, *supra*, the High Court, in reiterating longstanding principles of Article III standing, expressly noted that it had long recognized intangible injuries as actionable.  136 S. Ct. at 1549.

[5] *Meza v. Verizon Communications, Inc.*, 2016 WL 4721475 (E.D. Cal. Sept. 9, 2016), stands for the proposition that a complaint need not expressly reference an injury for purposes of constitutional standing if the nature of the statutory violation necessarily entails such injury.  *Id.* at *4.  That rule applies to Plaintiff's CLRA claim.

injuries." *Id.* at 971 (citing *Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251, 1258 (9th Cir. 2010) (discussing the history of informational injury serving as an injury-in-fact sufficient for standing)); *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1135 (9th Cir. 2016) ("informational injury need not result in direct pecuniary loss").

As then-Judge Alito noted in *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286 (3d Cir. 2005), "Injury-in-fact is not Mount Everest." 432 F.3d at 294. An "identifiable trifle" of injury shall suffice. *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973)); *Preminger v. Peake*, 552 F.3d 757, 763 (9th Cir. 2008) ("The injury may be minimal.").

Plaintiff submits that what Defendant really intends to argue is that Plaintiff cannot satisfy the separate and distinct **traceability** element of constitutional standing. Defendant is wrong. "Article III standing is broader than causation on the merits[.]" *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1053 n.3 (N.D. Cal. 2015). "A defendant's actions can give rise to Article III standing even if it is only a "small, incremental step" towards the alleged injury-in-fact. *Rooney v. Sierra Pac. Windows*, 2011 WL 5034675, at *9 n.6 (N.D. Cal. Oct. 11, 2011) (quoting *Massachusetts v. E.P.A.*, 549 U.S. 497, 523 (2007)). "[A] defendant's actions need [not] be the only cause of a plaintiff's alleged injury-in-fact." *Rooney, id.* at *9 n.6. The Ninth Circuit has held that a plaintiff does not need to demonstrate that the defendant's actions are the "proximate cause" of the plaintiff's injury. *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) ("Plaintiffs do not bear so heavy a burden."); *see also Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) ("the 'fairly traceable' standard is lower than that of proximate cause"). "To survive a motion to dismiss for lack of constitutional standing, plaintiffs must establish a 'line of causation' between defendants' action and their alleged harm that is more than 'attenuated.'" *Maya*, 658 F.3d at 1070. "The critical inquiry is whether the causal chain is plausible." *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1053 n.3 (N.D. Cal. 2015) (citing *Maya*). Here, the causal chain between Defendant's action and Plaintiff's injury is plausible. Defendant's mislabeling of its Product has created uncertainty and/or confusion as to whether the Product is, in fact, extra virgin olive oil. As a result, Plaintiff has suffered both an economic injury and an intangible injury as well.

/ / /

1      Finally, Defendant's reliance on a factually inaccurate reference in the original Complaint as to

2  Plaintiff's intentions in purchasing the Product at issue is misplaced.   The original Complaint's

3  allegation that Plaintiff purchased the Product "for the dual purpose of consuming it and determining

4  its authenticity," (Compl. ¶ 14), was inaccurate insofar as such allegation referenced the Plaintiff's

5  purpose as determining its authenticity, which is why Plaintiff filed the FAC omitting such factually

6  inaccurate allegation.  It is black letter law in the Ninth Circuit that "an amended complaint supercedes

7  the original complaint and renders it without legal effect[.]"   *Lacey v. Maricopa County*, 693 F.3d 896,

8  927 (9th Cir. 2012).   Thus, other than making an unseemly attempt to bias the Court, it is frankly

9  baffling why Defendant would make reference to allegations that were inadvertently included in the

10  original Complaint (along with other corrections, which were intended to "clean up" the original

11  Complaint in hopes of avoiding needless and wasteful motion practice as to the FAC) given that the

12  FAC is the operative pleading.   Defendant's reference to superceded allegations in the original

13  Complaint is sour grapes, plain and simple, and intended to distract the Court from evaluating the

14  FAC's operative allegations.   *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal.

15  2011) ("The Court is troubled that Defendants have devoted valuable pages in their Opposition to an

16  apparent smear campaign . . . .").

17      **C.      Plaintiff Has Standing to Seek Injunctive Relief.**

18      When an injunction is sought, the moving party must also show a continuing threat of injury.

19  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *City of

20  Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) ("Lyons' standing to seek the injunction requested

21  depended on whether he was likely to suffer future injury . . . .").

22      Defendant's challenge to Plaintiff's standing to sue for injunctive relief is without merit.

23  Although Defendant cites *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) (Def.'s

24  Mem. at 12:19-20), *Davidson* actually supports Plaintiff's position here by resolving the "district court

25  split in favor of plaintiffs seeking injunctive relief."   *Id.* at 969.   *Davidson* held that "a previously

26  deceived plaintiff may have standing to seek injunctive relief."   *Id.* at 970.   In *Davidson*, the plaintiff's

27  "alleged harm is her inability to rely on the validity of the information advertised on [defendant's

28  products] despite her desire to purchase [the products].   This court recognizes a history of lawsuits

1   based on similar informational injuries." *Id.* at 971.  Likewise, here, the FAC alleges that Plaintiff

2   purchased the Product "for personal consumption."  (FAC ¶ 9.)  Taking such allegations as true, it is

3   reasonable to infer that Plaintiff would purchase the Product if it were possible to determine prior to

4   purchase if the Product actually contained extra virgin olive oil.  To the extent that the Court would like

5   to see such allegation expressly, leave to amend should be granted.

6        As for the argument that Plaintiff must re-visit the specific Wal-Mart store in Antioch,

7   California in order to have standing to sue for injunctive relief, (Def.'s Mem. at 12:25-26), that is

8   wrong.  Defendant fails to cite any case authority in support of that proposition.  Indeed, this Court can

9   and should take judicial notice of the fact that Wal-Mart stores are ubiquitous throughout the State of

10  California including Los Angeles County, which is Plaintiff's current residence.  (FAC ¶ 9.)

11      **D.      The Complaint Plausibly Alleges Facts that Testing of Defendant's Product by a**

12      **Leading Laboratory Was Conducted Using the Methodology Prescribed by the**

13      **United States Standards for Grades of Olive Oil and Olive-Pomace Oil.**

14      The FAC plausibly alleges that Defendant's Product has been tested by a leading laboratory

15  using seven specific variables, and that such testing has confirmed that Defendant's Product is not extra

16  virgin olive oil.  (FAC ¶¶ 2, 15.)  Defendants characterizes such allegations as "conclusory," (Def.'s

17  Mem. at 13), but that is simply wrong.

18      Rule 8(a) of the Fed. Rules of Civil Procedure "simply calls for enough fact to raise a

19  reasonable expectation that discovery will reveal evidence" to support the allegations.  *Bell Atlantic*

20  *Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "[A] complaint attacked by a Rule 12(b)(6) motion to

21  dismiss does not need detailed factual allegations."  *Bell Atlantic*, 550 U.S. at 555.

22      Defendant can conduct discovery regarding the laboratory test results alleged in the Complaint

23  at the appropriate time.  Moreover, by identifying the seven variables that such laboratory testing

24  utilized, it is reasonable to infer that such testing used the precise methodology set forth by the AMS in

25  the Standards.  RJN Ex. 1.  Indeed, if one reviews carefully Table I of the Standards (§ 52.1539) on

26  page 9 of the document, there is substantial overlap between the 7 factors used by the laboratory and

27  what has been described in Table I.  In particular, the variables named as "Sensory Analysis" [Table

28

I(a)][6], "Free Fatty Acid" [Table I(b)], "Peroxide Value" [Table I(c)], and "Ultraviolet Absorption" [Table I(d)], are expressly referenced.

In addition, the variables mentioned in Table I(e), I(f), and I(g) of the Standards, which are described as "Purity Criteria," are surely another way of referring to "Insoluble Impurities," which is identified as a variable in the FAC. (FAC ¶¶ 2, 15.)

Further, three of the "optional" requirements in Table III are mentioned "Insoluble Impurities" [Table III[o], "Moisture & Volatile Content" [Table III(p)], and "Copper" [Table III(r)]. Notably, although Defendant has set forth Table I of the Standards in its Memorandum of Points and Authorities, (Def.'s Mem. at 5:9-6:26), Defendant has conspicuously omitted both Tables II and III. Such omission speaks volumes in light of the fact that at least three of the variables expressly identified in the FAC are set forth in Table III of the Standards. Plaintiff has attached the full Standards as Exhibit 1 to Plaintiff's Request for Judicial Notice.

Defendant's reliance on *Meyer v. Colavita USA Inc.*, 2011 WL 13216980 (S.D. Fla. Sept. 13, 2011) (Def.'s Mem. at 7:23-27), is misplaced. In that decision, the olive oil samples of the UC Davis Study were taken in California. *Id.* at \*5. In contrast, the plaintiffs therein were "individual consumers located in Florida who purchased extra virgin olive oil from at least one of the Defendants." *Id.* at \*1. The court found it significant that the consumers were located in Florida as follows:

> "[E]ven setting aside the flaws with the UC Davis Study, and assuming their results as true, the study paints a very incomplete picture from which one could at best infer that a portion of Defendants' extra virgin olive oil products, distributed and sold in certain locations in California, do not meet all of the standards promulgated by the IOC for extra virgin olive oil. ***This does little to support an inference that consumers purchasing Defendants' extra virgin***

---

[6] Table I(a) references "Organoleptic Characteristics." It is worth noting that a well-known online dictionary defines the term "organoleptic" as an adjective that relates to use of the sense organs. *See* RJN Ex. 2; https://www.merriam-webster.com/dictionary/organoleptic (last visited Nov. 20, 2018) ("being, affecting, or relating to qualities (such as taste, color, odor, and feel) of a substance (such as a food or drug) that stimulate the sense organs") ("involving use of the sense organs"). The Court may take judicial notice of dictionary definitions. *See Wayne v. Leal*, No. 07-1605, 2009 WL 2406299, at \*4 (S.D. Cal. Aug. 4, 2009) (holding that court may take judicial notice of facts "that are capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned, such as an almanac, ***dictionary***, calendar, or other similar source") (emphasis added).

*olive oil in Florida have been wronged or sold 'fake' olive oil.*  Plaintiffs make numerous conclusory allegations and assumptions based upon the UC Davis Study *but without alleging any facts presenting a nexus or connection to Florida*.  There are *no allegations that anyone in Florida purchased extra virgin olive [oil]* that tasted bad, or was tested and failed to meet certain standards, or was in any other way 'fake.'"

*Id.* at *5 (emphasis added).  This is the key holding in *Meyer* that Defendant neglected to mention in its analysis of such decision.  *Meyer* lends no support to Defendant's position.

### E.    The FAC Satisfies Rule 9(b).

Defendant argues that the FAC fails to satisfy the Rule 9(b) pleading requirements for deception or fraud.[7]  (Def.'s Mem. at 8:6-9:28.)  The FAC satisfies Rule 9(b).[8]

"A pleading 'is sufficient under Rule 9(b) if it identifies 'the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.''"  *Neubronner v. Milken*, 6 F.3d 666, 671-72 (9th Cir. 1993); *Towers Financial Corp. v. Solomon*, 126 F.R.D. 531, 535 (N.D. Ill. 1989) ("Rule 9(b) simply requires a sketch of the fraudulent scheme.").  As Rule 9(b) expressly states, "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  *See Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 997 (N.D. Cal. 2009).  In addition, the Ninth Circuit recognizes that Rule 9(b) "may be relaxed as to matters within the opposing party's knowledge."  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *see also Neubronner*, 6 F.3d at 672 ("This court has held that the general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's

---

[7] Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  To plead fraud with particularity, the pleader must state the time, place, and specific content of the false representations.  *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007).  The allegations "must set forth more than neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about the statement, and why it is false."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).  In essence, the defendant must be able to prepare an adequate answer to the allegations of fraud.  *Odom*, 486 F.3d at 553.

[8] Leave to amend should be granted if the Court dismisses the Complaint due to a curable pleading deficiency.

knowledge.  In such situations, plaintiffs cannot be expected to have personal knowledge of the relevant facts.").[9]

Although the FAC alleges that Plaintiff purchased multiple times "during 2017 and 2018" Defendant's Product, (FAC ¶ 14), Defendant challenges the "when" of Defendant's alleged fraud anyway.  As the district court explained in *Escobar v. Just Born, Inc.*, No. 2:17-cv-01826-BRO (PJW), 2017 WL 5125740 (C.D. Cal. June 12, 2017), "Although Plaintiff does not specify the particular address or date on which she purchased the Products, ***district courts in this Circuit have held that allegations that a misleading statement was made throughout the class period satisfy the Rule 9(b) particularity standard*.**"  *Escobar*, 2017 WL 5125740, at *13 (emphasis added).[10]  In *Escobar*, the district court denied a similar motion to dismiss premised upon Rule 9(b).  *Escobar*, 2017 WL 5125740, at *13.  This Court should follow *Escobar*.

Defendant does not challenge the adequacy of the FAC (unlike the original Complaint) in alleging the "where"[11] of Defendant's alleged fraud.

The "particular bottle and lot" and the "price paid" for the Product by Plaintiff are irrelevant to understanding the specific content of the false representations at issue here.

In addition, the FAC alleges: (1) the exact nature of the conduct at issue (misrepresenting the Product as extra virgin olive oil when it is not), (FAC ¶¶ 14-16); (2) the precise reason why such labeling is deceitful, *i.e.*, laboratory testing establishes that the Product is not extra virgin olive oil, (FAC ¶ 15); and (3) Defendant intended its packaging to induce Plaintiff and others to purchase the Product, (FAC ¶ 48).  Such allegations surely describe the "particular misconduct which is alleged to constitute the fraud charged so that [it] can defend against the charge and not just deny that [it] has[s]

---

[9] The FAC pleads facts from which to infer scienter.

[10] *See also In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1099-1100 (C.D. Cal. 2012) ("*Kearns* suggests that the relevant 'when' is either when the allegedly misleading statement was made or when it was viewed or heard by the plaintiff, not when it resulted in a purchase."); *Von Koenig* v. *Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1077 (E.D. Cal. 2010) (holding that Rule 9(b) was satisfied where plaintiff alleged that "between March 4, 2005 and March 4, 2009," defendant's product label contained alleged misrepresentations); *Pom Wonderful LLC* v. *Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1112 (C.D. Cal. 2009) (holding that Rule 9(b) was satisfied because plaintiff alleged that a product label contained the same misrepresentation throughout the class period).

[11] The FAC alleges that Plaintiff purchased the Product at a Wal-Mart store located in Antioch, California.  (FAC ¶ 9.)

done anything wrong." *Neubronner*, 6 F.3d at 671. "Rule 9(b) requires no more." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 990 (9th Cir. 2008); *id.* at 989-90 (stating that allegations are "sufficient[ly] detail[ed] . . . to give us some assurance that [Plaintiff's] theory has a basis in fact.").

Defendant's reliance on *Padilla v. Costco Wholesale Corp.*, 2012 WL 2397012 (N.D. Ill. June 21, 2012), is misplaced.  Although the court held that the plaintiff failed to satisfy the Rule 9(b) particularity requirement as to the plaintiff's state law consumer fraud claim based on the Glucosamine with MSM product, the court explained its rationale as follows:

> "[Plaintiff] repeatedly alleges that 'numerous' clinical studies do not show that Kirkland Glucosamine products help '*joint renewal and rejuvenation*'
>
> However, [Plaintiff] does not allege that the Glucosamine with MSM label contains any references to 'joint renewal or rejuvenation.'"

*Padilla*, 2012 WL 2397012, at *4.  The district court's analysis in *Padilla* is totally dissimilar to the circumstances at issue here.  In *Padilla*, there was a gap between the purported evidence of the circumstances constituting fraud and the defendant's allegedly fraudulent product labeling.  Here, in contrast, no such gap exists.  Defendant's Product was tested by a leading laboratory, and determined not to be extra virgin olive oil, which is precisely what Defendant's Product is labeled as containing.

### 1.    Reliance Is Sufficiently Pled.

Finally, to the extent that Defendant seeks to apply the Rule 9(b) particularity standard to the reliance element of the CLRA, Defendant is mistaken.  *In re NJOY, Inc. Consumer Class Action Litig.*, 2014 WL 12586074, at *7 (C.D. Cal. Oct. 20, 2014) ("The court believes the better view is that reliance need not be pled with particularity under Rule 9(b) because it is a condition of the mind.").

Assuming *arguendo* that reliance must be pled with particularity, the Complaint does so.  As noted in *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027 (N.D. Cal. 2014), "a number of courts have required plaintiffs under the CLRA and UCL to affirmatively state which advertisement or commercial containing a misrepresentation plaintiff relied upon in order to adequately plead reliance under Rule 9." *Id.* at 1044.  Here, the FAC alleges that Plaintiff purchased the Product.  (FAC ¶ 9.)  Thus, this is not a situation in which Defendant has to guess as to which of its products Plaintiff purchased and is asserting as the basis for her CLRA claim.

Defendant's reliance on a factually inaccurate reference in the original Complaint as to Plaintiff's intentions in purchasing the Product at issue, (Def.'s Mem. at 20:18-19), is misplaced.  As mentioned above, the original Complaint's allegation that Plaintiff purchased the Product "for the dual purpose of consuming it and determining its authenticity," (Compl. ¶ 14), was inaccurate insofar as such allegation referenced the Plaintiff's purpose as determining its authenticity, which is why Plaintiff filed the FAC omitting such factually inaccurate allegation.

As for the rest of the putative class, reliance is plausibly pled in the FAC.  This Court can and should infer a presumption of reliance as to the entire class in light of the indisputable materiality of the misleading labeling at issue here.[12]  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009) (holding that a presumption of reliance "arises wherever there is a showing that a misrepresentation was material") (quoting *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 976-77 (1997)); *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1095 (1993) ("actual reliance can be proved on a class-wide basis when each class member has read or heard the same misrepresentations"); *Occidental Land, Inc. v. Superior Court*, 18 Cal. 3d 355, 363 (1976); *Vasquez v. Superior Court*, 4 Cal.3d 800, 814 (1971); *Chapman*, 220 Cal. App. 4th at 229; *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009); *Morgan v. AT & T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1258 (2009).[13]

In *In re Toyota Motor Corp.*, 790 F. Supp. 3d 1152 (C.D. Cal. 2011), the Court held, "Plaintiffs sufficiently allege a ***material misrepresentation***: the propensity of a vehicle to accelerate suddenly and dangerously out of control is material to a reasonable person. . . . ***This satisfies the actual causation***

---

[12] "A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.' "  *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009) (quoting *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 976-77 (1997)).
The Legislature intended the CLRA to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."  (Cal. Civ. Code § 1760.)
[13] *See also Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055-56 (9th Cir. 2017); *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) ("That one would have behaved differently can be presumed, or at least inferred, when the omission is material.") (citing *In re Tobacco II*); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).

1    *and reliance requirements for purposes of the CLRA*." Id. at 1170 ("actual reliance may be presumed

2    because the alleged SUA defect is material").[14]

3         **F.**     ***Kwan v. Sanmedica Int'l* Does Not Support Dismissal for Lack of Statutory**

4                 **Standing.**

5       Defendant relies upon *Kwan v. Sanmedica Int'l*, 854 F.3d 1088 (9th Cir. 2017), in support of

6    the proposition that Plaintiff lacks "standing." Defendant's reliance on *Kwan* is totally misplaced. As

7    an initial matter, *Kwan* is not a decision regarding either constitutional standing or statutory standing.

8    After all, *Kwan* does not mention the word "standing" even once. And, it is worth noting that the Ninth

9    Circuit affirmed the district court's dismissal of the complaint for failure to state a claim (as opposed to

10   lack of subject matter jurisdiction) under Rule 12(b)(6) (instead of Rule 12(b)(1)). This definitively

11   confirms that constitutional standing was not at issue therein.

12       Moreover, *Kwan* stands for the unremarkable proposition that mere allegations that a

13   defendant's marketing claims lack scientific substantiation are insufficient to state a consumer

14   protection claim under either the UCL or CLRA. *Kwan*, 854 F.3d at 1096-97 ("Since California law

15   does not provide a private cause of action for claims that advertising lacks substantiation, the failure to

16   allege specific facts pointing to actual falsehood constitutes a fatal flaw."). *Kwan* is readily

17   distinguishable from the instant action, which does not rely on lack of scientific substantiation.

18   Instead, the FAC in the instant action affirmatively alleges the existence of test results by a leading

19   laboratory indicating that Defendant's Product is not extra virgin olive oil. (FAC ¶¶ 2, 15.) This is a

20   far cry from the circumstances at issue in *Kwan*.

21   / / /

22

23    [14] *See also Bahamas Surgery Ctr., LLC v. Kimberly-Clark Corp.*, 2017 WL 2120062, at *3 (C.D. Cal. May 15, 2017) ("The Court did not include actual reliance as an element of the claim, because

24    '[a]ctual reliance is presumed (or at least inferred) when the omission is material.'") (citing *In re Tobacco II*), *appeal docketed*, No. 18-55483 (9th Cir. Apr. 13, 2018); *Herremans v. BMW of North*

25    *Amer., LLC*, 2014 WL 5017843, at *18 (C.D. Cal. Oct. 3, 2014); *Corson v. Toyota Motor Sales, U.S.A., Inc.*, 2013 WL 10068136, at *6 (C.D. Cal. July 18, 2013); *Beltran v. Avon Prods. Inc.*, 2012

26    WL 12303424, at *6 (C.D. Cal. Dec. 11, 2012); *Red v. Kraft Foods, Inc.*, 2012 WL 8019257, at *7 (C.D. Cal. Apr. 12, 2012); *Johnson v. General Mills, Inc.*, 276 F.R.D. 519, 522 (C.D. Cal. 2011) ("In

27    *Ticketmaster*, the Ninth Circuit explicitly recognized that a classwide inference of reliance for both affirmative misrepresentations and omissions is proper for a CLRA claim."); *Ehrlich v. BMW of North*

28    *America, LLC*, 801 F. Supp. 2d 908, 919 (C.D. Cal. 2010).

### G.    Plaintiff's Claims Are Not Preempted.

Defendant argues that Plaintiff's claims are preempted not by federal statutes, but rather by federal regulations.   (Def.'s Mem. at 15:8.)   Defendant argues that its preemption argument is predicated on the assumption that Plaintiff seeks to apply a "*different* standard" than what the Agricultural Marketing Service applies for olive oil.  (Def.'s Mem. at 16:15-17.)

Federal preemption is an affirmative defense upon which the defendants bear the burden of proof.  *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 925 n.5 (N.D. Cal. 2014) (citing *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 131 S. Ct. 1068, 179 L.Ed.2d 1 (2011) ("Federal preemption is an affirmative defense upon which the defendants bear the burden of proof") (citations omitted)).

Simply put, Defendant's preemption defense is unsubstantiated.  Significantly, there is nothing in the FAC to indicate that Plaintiff seeks to apply a methodology or standard for testing extra virgin olive oil that varies from what the AMS provides as guidance.  Defendant's argument to the contrary amounts to rank speculation.

Thus, Defendant's preemption defense is premature at best.

### H.    The Primary Jurisdiction Doctrine Does Not Apply.

The Court should exercise its discretion to avoid applying the primary jurisdiction doctrine to the FAC.

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency ... and is to be used only if a claim involves an issue of first impression or a particularly complicated issue Congress has committed to a regulatory agency."  *Hendricks*, 30 F. Supp. 3d at 931 (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)).  "The doctrine is to be employed when 'protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme.'"  *Hendricks*, 30 F. Supp. 3d at 931 (quoting *United States v. General Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987) (quoting *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 353, 83 S. Ct. 1715, 10 L.Ed.2d 915 (1963)). In *Hendricks*, this Court rejected application of the preemption doctrine because it held that "the FDA has already carried out its regulatory scheme and has established a clear regulation covering the standard of fill for tuna cans."

1  *Hendricks*, 30 F. Supp. 3d at 931.  That same reasoning applies here.  That is, the AMS has set forth its

2  Standards effective since October 25, 2010.  Defendant has not raised any current regulatory activity

3  whereby the AMS is considering a change to the Standards.

4  Although Defendant contends that olive oil grade "requires specific testing," (Def.'s Mem. at

5  18:13), there is nothing to indicate that such testing must be conducted *solely* by the AMS.  In other

6  words, private laboratories are surely just as well-equipped to test olive oil grades as is the AMS.  Any

7  suggestion to the contrary by Defendant is speculative.

8  **I.    The Negligent Misrepresentation Claim Is Subject to an Exception to California's**

9  **Economic Loss Rule.**

10  Defendant contends that the negligent misrepresentation claim is subject to an exception to

11  California's economic loss rule.  Not so.

12  Defendant fails to mention the fact that an "exception applies to claims for fraud in the

13  inducement."  *Tasion Communications, Inc. v. Ubiquiti Networks, Inc.*, 2013 WL 4530470, at *11

14  (N.D. Cal. Aug. 26, 2013) (citing *Krzyzanowsky v. Orkin Exterminating Co., Inc.*, No. C 07–05362

15  SBA, 2009 WL 481267, at *11–*12 (N.D. Cal. Feb. 24, 2009) (denying motion for summary judgment

16  on breach of duty to warn and negligent training and supervision claims where reasonable fact finder

17  could have found elements of fraud in the inducement based on the defendant's false advertising and

18  false statements in presentation to the plaintiff)).  Unlike the case authority cited by Defendant, the

19  FAC alleges that Defendant knew its representations on its Product labeling was false at the time that

20  Defendant made them.  (*See, e.g.*, FAC ¶ 48 (Defendant knew its conduct was unauthorized,

21  inaccurate, and misleading."); *see also* FAC ¶ 49 ("Defendant violated California law because the

22  Crisco EVOO product is labeled to be misleading and which labeling is *intentionally intended* to

23  prevent the consumer from knowing the true quality of the Crisco EVOO product.") (emphasis added);

24  FAC ¶ 59 ("Defendant violated the 'fraudulent' prong of the UCL, by misleading Plaintiff and the

25  Class to believe that the Crisco EVOO product was Extra Virgin Olive Oil when it was not, and

26  misleading Plaintiff and the Class to believe that such packaging and labeling practices were lawful,

27  accurate, true, and not intended to deceive or mislead consumers.").)

28  / / /

**J.      The UCL Claim Should Not Be Dismissed Under the "Unfair" Prong.**

**1.      Standard for "Unfair" Prong of UCL**

California Supreme Court case authority has consistently held that "the unfair competition law's scope is broad."[15] *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999) (describing the UCL's coverage as "sweeping"); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (Cal. 2003); *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1103 (1996) ("This standard is intentionally broad").

Although the California Supreme Court has yet to define "unfair" under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* in the consumer context (as opposed to the business competitor context involving anticompetitive practices), *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 184, 187 & n.12 (Cal. 1999), California intermediate appellate courts have proffered their respective definitions. *See Morgan v. AT & T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254-55 (2009).

One court has said that an unfair business practice is one that "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (1984); *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) ("An unfair business practice is one that either 'offends an established public policy' or is 'immoral, unethical, oppressive, unscrupulous or

---

[15] The California Supreme Court has explained the rationale for such broad scope as follows:
" '[T]he Legislature ... intended by this sweeping language to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur. Indeed, ... the section was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable ' "new schemes which the fertility of man's invention would contrive." ' As the . . . court observed: 'When a scheme is evolved which on its face violates the fundamental rules of honesty and fair dealing, a court of equity is not impotent to frustrate its consummation because the scheme is an original one....' With respect to 'unlawful' or 'unfair' business practices, [former] section 3369 [today section 17200] specifically grants our courts that power. [¶] In permitting the restraining of all 'unfair' business practices, [former] section 3369 [today section 17200] undeniably establishes only a wide standard to guide courts of equity; as noted above, given the creative nature of the scheming mind, the Legislature evidently concluded that a less inclusive standard would not be adequate." '[I]t would be impossible to draft in advance detailed plans and specifications of all acts and conduct to be prohibited [citations], since unfair or fraudulent business practices may run the gamut of human ingenuity and chicanery.' "
*Cel-Tech*, 20 Cal. 4th at 181 (internal citations omitted).

substantially injurious to consumers.' ") (citing *Casa Blanca*); *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1117 (N.D. Cal. 2016) ("A business practice is unfair within the meaning of the UCL if it violates established public policy *or* if it is immoral, unethical, oppressive or unscrupulous . . . .") (emphasis in original).

Another court has held that deciding whether a practice is unfair "involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer.  In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim[.]" *Motors, Inc. v. Time Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980); *State Farm*, 45 Cal. App. 4th at 1103-04; *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

Another court has applied *Cel-Tech*'s definition of "unfair" to consumer actions insofar as the "unfair" claim is predicated on public policy.[16] *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002) ("we read *Cel-Tech* to require that the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions").

Finally, another court has applied a definition based upon section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(n).  *Camacho v. Automobile Club of So. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006) ("Since 1980, the factors that define unfairness under section 5 are: (1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided.").[17]  However, the Ninth Circuit has expressly rejected the FTC test. *Lozano*

---

[16] Given that courts have characterized *Cel-Tech* as potentially signaling a "narrower interpretation," *Gregory*, 104 Cal. App. 4th at 854, which is inconsistent with Supreme Court authority, including *Cel-Tech* itself, Plaintiff's position is that *Gregory*'s definition of "unfair" should **not** be applied here.  *See Camacho v. Automobile Club of So. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006) ("[I]n the context of consumer cases, 'tethering' to positive law undercuts the ability of the courts to deal with new situations, and new abuses.").

[17] Significantly, *Camacho* expressly clarified that the third factor should be interpreted to avoid significantly reducing its effectiveness.  That is, "consumers cannot have reasonably avoided the injury if they could not have reasonably anticipated the injury, if they did not have the means to avoid the injury, or if their free market decisions were unjustifiably hampered by the conduct of the seller." 142 Cal. App. 4th at 1405.

*v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007) ("[W]e decline to apply the FTC standard in the absence of a clear holding from the California Supreme Court.").

As recognized by the Ninth Circuit, the various tests "are not mutually exclusive." *Lozano*, 504 F.3d at 736 ("adopting one standard does not necessitate rejection of the other").

It is well-established that under section 17200, " 'a practice may be deemed unfair even if not specifically proscribed by some other law.' " *Korea Supply Co.*, 29 Cal. 4th at 1143 (quoting *Cel-Tech*, 20 Cal. 4th at 180). "In other words, a practice is prohibited as 'unfair' . . . even if not 'unlawful' and vice versa." *Cel-Tech*, 20 Cal. 4th at 180.

Regardless of whether this Court applies the "balancing test" of *State Farm* or the test in *Casa Blanca*, Plaintiff submits that the FAC's allegations meet such definitions of "unfair" such that this Court need not decide which definition to apply here.

### 2. The FAC Has Alleged an "Unfair" Practice Via an "Unethical" Practice in Violation of United States Standards for Grades of Olive Oil.

Regardless of whether this Court applies the "balancing test" of *State Farm* or the test cited in *Casa Blanca*, the FAC has sufficiently alleged an "unfair" practice that violates the United States Standards for Grades of Olive Oil, which are industry standard throughout the United States. (*See* FAC ¶¶ 2, 15.)

Paragraph 2 and 15 of the FAC allege that extensive clinical testing conducted by a leading laboratory, which measures seven key variables, establishes conclusively that Defendant's Product is not extra virgin olive oil. For the reasons set forth above in section II.D *supra*, this Court can and should reasonably infer that the United States Standards for Grades of Olive Oil and Olive-Pomace Oil is the standard against which Defendant's Product was measured and analyzed.

Defendant has been unable to cite *any* case authority indicating that the Standards cannot serve as the predicate for Plaintiff's position that Defendant's Product, which does not comply with such specifications is "unethical" in violation of the "unfair" prong of the UCL.

/ / /

/ / /

/ / /

3. **The FAC Has Sufficiently Alleged an "Unfair" Practice Via an Established Public Policy.**

The FAC alleges that Defendant's conduct offends an established public policy.  (FAC ¶ 58.)  The Standards provide the established public policy for Plaintiff's position.  So does California's statutory definition of extra virgin olive oil.  (Cal. Health & Safety Code § 112877(a)(1).)

a) **California Decisions Rely Upon Violations of Public Policy Originating Beyond California as the Predicate of UCL "Unfair" Prong Claims.**

It is well-established in California case authority that established public policy can be borrowed from non-California sources including federal public policy.  For example, in *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457 (2006), the California Court of Appeal found the existence of an unfair business practice based upon violation of "**federal** public policy of expanding opportunities for home ownership by reducing the cost of borrowing, in part through the use of automated underwriting software."  *Id.* at 1473 (emphasis added).  Significantly, the Court of Appeal did not mention *any* California statute setting forth such policy.

Similarly, in *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1104 (1996), the California Court of Appeal, in addressing the "unfair" prong, identified "[e]xamples of unfair business practices includ[ing]:  . . . systematically breaching a form contract affecting many consumers."  *Id.* at 1104.  Significantly, the Court of Appeal did not cite a California state court decision, but rather cited a federal circuit court decision, *Orkin Exterminating Co., Inc. v. F.T.C.*, 849 F.2d 1354, 1367–68 (11th Cir. 1988), which was not purporting to address California public policy at all.  *State Farm*, 45 Cal. 4th at 1104.  Rather, the Eleventh Circuit's "unfairness" analysis was limited to the enforcement of section 5 of the Federal Trade Commission Act.  *Orkin*, 849 F.2d at 1355, 1363-66.

Indeed, given that the "unlawful" prong of the UCL is not limited to borrowing just California state law, but rather includes "any practices forbidden by law, be it civil or criminal, **federal**, state, or **municipal**, statutory, regulatory, or court-made,'" *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994) (emphasis added), it makes no sense to restrict the equally broad "unfair" prong to a

- 19 -

California public policy. "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." *Dyna-Med, Inc. v. Fair Employment and Housing Comm'n*, 43 Cal. 3d 1379, 1387 (Cal. 1987).

### 4. The FAC Has Sufficiently Alleged an "Unfair" Practice Via Substantial Injuries.

The FAC, which alleges tangible, economic harm, alleges a strong basis for concluding that Defendant's actions were substantially injurious to Plaintiff and to putative class members. *See Cooks v. The Hertz Corp.*, No. 3:15-cv-0652-NJR-PMF, 2016 WL 3022403, at *8 (S.D. Ill. Apr. 29, 2016) (holding that "when all of Plaintiffs' harms are taken together, they sufficiently allege the possibility of substantial loss").

### 5. The FAC Has Sufficiently Alleged an "Unfair" Practice Under a Balancing Test.

Assuming *arguendo* that a balancing test is applicable, the FAC has sufficiently alleged facts showing that under a balancing test, the harm to consumers like Plaintiff from paying a price premium resulting in profit for Defendant, which Defendant would otherwise not have received, outweighs the reasons, justifications, and motives of Defendant. Although the tangible, economic harm to Plaintiff and the putative class is substantial as pled in the FAC, the sole reason alleged in the FAC for Defendant's practice is to increase Defendant's profits. (FAC ¶ 17.) The FAC does not allege any benefit either to Plaintiff or to competition resulting from Defendant's conduct. The FAC does not allege that Plaintiff received an increase in the level of quality of its Product. *Orkin*, 849 F.2d at 1365. Given that there is nothing in the four corners of the FAC from which this Court can infer that Defendant's motivation for its unfair practice was other than to improve its financial condition, the alleged tangible, economic injury to Plaintiff and the putative class via the loss of money outweighs the reasons, justifications, and motives of Defendant including its profit motive.

/ / /

/ / /

/ / /

1
2

      **6.**     **Defendant's Argument Is Inappropriate for Resolution via a Motion to Dismiss.**

3
4
5
6
7
8
9
10
11

     Defendant's argument is inappropriate for resolution via the instant Motion to Dismiss under Rule 12(b)(6). *See Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35 (2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer."), *cited in Byler v. Deluxe Corp.*, No. 3:16-cv-00493-AJB-JLB, 2016 U.S. Dist. LEXIS 111763, at *26 (S.D. Cal. Aug. 19, 2016); *see also Delano Farms Co. v. California Table Grape Comm'n*, No. 1:07-cv-1610 OWW SMS, 2010 WL 2952358, at *29 (E.D. Cal. July 26, 2010) (holding that the defendant's dispute regarding whether its alleged scheme is "unfair" "is not a determination that can be made on a motion to dismiss").

12
13
14

      **7.**     **Defendant's Argument that Plaintiff's Injury Was Reasonably Avoidable Seeks to Apply the FTC Test That the Ninth Circuit Has Expressly Rejected in the UCL "Unfair" Prong Context.**

15
16
17
18
19
20

     Defendant argues that Plaintiff's injury was an injury that could have been reasonably avoided. (Def.'s Mem. at 20:12-19.)  In support, Defendant expressly relies upon the third prong of the FTC's section 5 test.  As mentioned above, however, the Ninth Circuit has expressly declined to apply the FTC standard as the definition of "unfair" under the UCL.  *Lozano*, 504 F.3d at 736 ("[W]e decline to apply the FTC standard in the absence of a clear holding from the California Supreme Court.").  Notably, Defendant's Memorandum omits citing *Lozano*.

21
22
23
24
25
26
27

     Moreover, as explained in *Camacho*, the third element of the FTC test is not intended to "significantly reduce the effectiveness of section 5," and should not be given an interpretation that would do so. 142 Cal. App. 4th at 1405. For example, "consumers cannot have reasonably avoided the injury if they could not have ***reasonably anticipated the injury***." *Id.* (emphasis added) (citing *Orkin Exterminating Co., Inc. v. F.T.C.*, 849 F.2d 1354, 1365 (11th Cir. 1988)).  There is nothing in the FAC from which to infer that Plaintiff could have reasonably anticipated the injury.  Defendant relies entirely upon an inadvertent allegation in the original Complaint that was deleted in filing the FAC

28

after it was brought to Plaintiff's attention via Defendant's Motion to Dismiss the original Complaint. Thus, Defendant's argument is without merit.

**K.    The UCL Claim Should Not Be Dismissed Under the "Unlawful" Prong.**

Defendant can't have it both ways.  On one hand, Defendant relies heavily upon the Standards as the applicable standard for analyzing extra virgin olive oil and characterizes such Standards as "federal regulations," (Def.'s Mem. at 15:8; 16:3-4), but, on the other hand, Defendant contends that the FAC does not allege that the Product fails to satisfy any federal regulatory standard for olive oil. Although this Court can and should infer that the FAC is relying upon the Standards as the law that was violated by Defendant, this Court can and should grant leave to amend to make such allegation explicit if it deems such amendment as necessary for Plaintiff to proceed under the "unlawful" prong of the UCL.

In addition, Defendant omits to mention that the definition of extra virgin olive oil is specifically defined in a California statute to be consistent with federal standards.  Indeed, as of January 1, 2012, California has defined "Extra virgin olive oil" as:

> "virgin olive oil that has excellent flavor and odor expressed as a median of defects equal to zero and a median of fruitiness greater than zero, has a free fatty acid content, expressed as oleic acid, of not more than 0.8 grams per 100 grams oil, has a peroxide value of not more than 20 milliequivalent peroxide oxygen per kilogram oil *and meets the additional requirements for "United States Extra Virgin Olive Oil" outlined in the United States Standards for Grades of Olive Oil and Olive-Pomace Oil published in the Federal Register that are in effect on October 25, 2010*."

(Cal. Health & Safety Code § 112877(a)(1) (emphasis added).)  The California Legislature's intent to define "extra virgin olive oil" consistent with the federal Standards is undeniably clear. The Legislative Counsel's Digest to Senate Bill 818 (2011-2012 Regular Session) indicates in section 10 that:

> "It is the intent of the Legislature that California's definition of olive oil be consistent with federal standards that have been revised to reflect international standards."

(Legislative Counsel's Digest to Senate Bill 818 (2011-2012 Regular Session) § 10.)

/ / /

/ / /

/ / /

**L.**  **The UCL Claim Should Not Be Dismissed Under the "Fraudulent" Prong Because the FAC Plausibly Alleges Facts Indicating that a Reasonable Consumer Could Be Deceived by the Product.**

Defendant argues that its Product cannot plausibly confuse a reasonable consumer.  (Def.'s Mem. at 22:8-24.)

**1.**  **Defendant's Characterization of the "Reasonable Consumer" Test Is Incomplete.**

A CLRA claim is governed by the "reasonable consumer" test, which requires that a plaintiff show that members of the public are likely to be deceived by the business practice at issue.  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.  Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, ***could*** be misled."  *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2013) (emphasis added); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citing *Lavie*). Whether advertising is misleading "is determined by considering a reasonable consumer who is neither the most vigilant and suspicious of advertising claims nor the most unwary and unsophisticated, but instead is 'the ordinary consumer within the target population.'"  *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226 (2013) (quoting *Lavie*, 105 Cal. App. 4th at 510).

Defendant omits to mention that a "reasonable consumer" is not "the most vigilant and suspicious of advertising claims."  *Chapman*, 220 Cal. App. 4th at 226.  Indeed, Defendant omits to mention that in *Lavie*, *supra*, the California Court of Appeal held, "Nor need a reasonable consumer necessarily be wary or suspicious of advertising claims."  105 Cal. App. 4th at 510; *id.* at 509 ("a 'reasonable consumer' need not be 'exceptionally acute and sophisticated'").  Similarly, Defendant omits to mention, "A 'reasonable consumer' . . . 'is ***not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture*** . . . ."  *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682 (2006) (emphasis added and citation omitted).  Indeed, just recently, the California Court of Appeal issued a published decision that reiterated that California's consumer

protection statutes "prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a **capacity, likelihood or tendency to deceive or confuse the public**.'" *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 237 Cal. Rptr. 3d 683, 697 (2018) (emphasis added) (quoting *Leoni v. State Bar*, 39 Cal. 3d 609, 626 (1985)).

Defendant has also omitted to mention that "[t]he Ninth Circuit has . . . emphasized that it is appropriate only 'in rare situations' to dismiss CLRA, FAL, and UCL claims—as a matter of law—for failure to plausibly allege that reasonable consumers would likely be deceived by food packaging." *Stiles v. Trader Joe's Co.*, No. CV 16-04318 TJH (KSx), 2017 WL 3084267, at *4 (C.D. Cal. Apr. 4, 2017) (citing *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) ("the reasonable consumer standard . . . . raises questions of fact that are appropriate for resolution on a motion to dismiss only in 'rare situation[s].'")) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)). "'Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer.'" *Brady*, 2018 WL 4275356, at *3 (citations omitted). Thus, Defendant has omitted key guidance from the Ninth Circuit.

### 2. The FAC Plausibly Alleges Facts Indicating that a Reasonable Consumer Could Be Deceived by the Product.

Defendant's argument boils down to a single erroneous assumption, which is that the laboratory test results of Defendant's Product are premised upon a methodology that did not apply the Standards as the applicable standard for analyzing extra virgin olive oil. (Def.'s Mem. at 22:22-24.) But, Defendant's assumption is mistaken. The FAC does, in fact, rely upon a methodology that applies the Standards as the applicable standard for analyzing extra virgin olive oil. To the extent that the Court disagrees, this Court can and should grant leave to amend to make such allegation explicit in order for Plaintiff to proceed under the "fraudulent" prong of the UCL.

### M. The UCL and FAL Claims Do Not Fail Because of an Adequate Remedy at Law.

Defendant argues that Plaintiff cannot obtain equitable relief under the UCL and FAL because she has an adequate remedy at law. (Def.'s Mem. at 22:25-23:11.) Although Defendant is correct that "some federal courts have so held," *Aberin v. American Honda Motor Co., Inc.*, No. 16-cv-04384-JST,

2018 WL 1473085 (N.D. Cal. Mar. 26, 2018) (Tigar, J.), this Court has recently ruled against such holding. *Id.* at \*9 ("This Court joins the many other courts, however, that have reached the opposite conclusion, finding no bar to the pursuit of alternative remedies at the pleadings stage.") (citing cases).

**N.      The Prayer for Punitive Damages Should Not Be Stricken or Dismissed.**

As an initial matter, Defendant relies upon strawperson arguments to seek the dismissal of the request for punitive damages by attributing such request as made in regards to the UCL claim, the FAL claim, and the negligent misrepresentation claim. Given that the FAC does not seek punitive damages in regards to such claims for relief, Defendant's analysis in regards to such claims is irrelevant.

Moreover, as to the CLRA claim, which does expressly seek punitive damages, the Court can and should infer that in light of the allegations of fraudulent conduct attributed to Defendant, (FAC ¶¶ 48, 49, 59), that an adequate factual basis exists to plead punitive damages.

**O.      Leave to Amend Should Be Granted.**

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires." In fact, the Ninth Circuit has held that whenever a district court dismisses a case, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Thus, if the Court is inclined to grant the instant Motion due to a curable pleading deficiency, this Court can and should grant Plaintiff leave to amend.

## III.      CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court deny the motion in its entirety, and grant such further and other relief as it deems appropriate.

Dated:  November 21, 2018                    PACIFIC TRIAL ATTORNEYS, P.C.

                                             By:  */s/ Scott J. Ferrell*

                                             Scott. J. Ferrell
                                             Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on November 21, 2018, I electronically filed the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPOSITION TO DEFENDANT'S MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Scott J. Ferrell*
Scott J. Ferrell